United States Court of Appeals,
Fifth Circuit.

No. 94-30357.

Jack R. SALLEY, individually and on behalf of his minor daughter,
Margaret Danielle Salley, Margaret R. Salley, individually and on
behalf of their minor daughter, and Margaret Danielle Salley,
Plaintiffs-Appellants-Cross-Appellees,

v.

The ST. TAMMANY PARISH SCHOOL BOARD and Carole Smith, Defendants-
Appellees-Cross-Appellants.

Charles N. Branton, Movant-Appellant.

July 10, 1995.

Appeals from the United States District Court for the Eastern
District of Louisiana.

Before WOOD, JR.,* JOLLY and DeMOSS, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge:

Jack R. Salley, individually and on behalf of his minor
daughter, Margaret Danielle Salley ("Danielle"); Margaret R.
Salley;[1] and Danielle ("the Salleys") appeal the decision of the
district court. The district court rejected the Salleys' claims
for residential placement for Danielle, compensatory damages,
punitive damages, and attorneys' fees, but found that the
defendants, St. Tammany Parish School Board and Carole Smith ("St.
Tammany"), had committed certain procedural violations of the
Individuals with Disabilities Education Act ("IDEA," or "the Act"),

---

*Circuit Judge of the Seventh Circuit, sitting by
designation.

[1]Mrs. Salley died in May 1993. Mr. Salley was subsequently
named the succession's representative in this suit.

20 U.S.C. § 1400, *et seq.* The district court further found, however, that the violations committed by St. Tammany did not negatively affect the actions taken by the Salleys regarding Danielle's education. Accordingly, the district court awarded only nominal damages to the Salleys. St. Tammany appeals the decision of the district court to the extent that it found St. Tammany liable for committing procedural violations of the Act.

## I. BACKGROUND

We need not re-state the factual background and procedural history of this case in detail here as it was well-documented by the district court in its two opinions. *See Salley v. St. Tammany Parish Sch. Bd.,* No. 92-1937, 1993 WL 386299 (E.D.La. Sept. 20, 1993); *Salley v. St. Tammany Parish Sch. Bd.,* No. 92-1937, 1994 WL 148721 (E.D.La. Apr. 18, 1994). In summary, the Salleys moved to Louisiana from Pennsylvania in April or May of 1985, when Danielle was in the fourth grade. The Salleys enrolled Danielle in Carolyn Park Elementary School ("Carolyn Park"), a public school located in St. Tammany Parish, on May 8, 1985. Danielle had been receiving special educational services in Pennsylvania pursuant to an individualized education program ("IEP") during the three years immediately prior to moving to Louisiana. Upon enrolling Danielle in Carolyn Park, Mrs. Salley provided copies of Danielle's records, including her IEP's; Mrs. Salley also orally informed school officials that Danielle had been diagnosed as learning disabled. Pending an evaluation, Danielle was placed in a regular classroom setting for the remaining fourteen days of the 1984-85 school year.

2

St. Tammany later returned Danielle's Pennsylvania school records to the Salleys without examining them.

The Salleys were not provided with notice of their rights under IDEA or Louisiana law, and no further action was taken regarding Danielle's educational status during the summer of 1985. The Salleys then removed Danielle and her siblings from St. Tammany and enrolled them in Our Lady of Lourdes Catholic School ("Lourdes"), a private school. Danielle completed the fifth grade and a portion of the sixth grade at Lourdes, but she showed no real progress and her conduct deteriorated.

In the fall of 1986, the Salleys re-enrolled Danielle in the St. Tammany public school system. At this time, the Salleys informed the school counselor that Danielle had been experiencing difficulty in a regular school environment. The Salleys again provided St. Tammany with copies of Danielle's educational records, but the Salleys were still not provided with written notification of their rights under federal and state law. In lieu of formally evaluating Danielle or preparing an IEP for her, St. Tammany instead developed an informal educational plan to accommodate Danielle. Danielle's teachers were aware of Danielle's difficulties and the Salleys fully consented in the formulation of the informal plan. Under this arrangement, Danielle fulfilled the requirements of the sixth and seventh grades, and she began the eighth grade. She scored well on standardized tests during this period, but Danielle's overall classroom work suffered due to her behavioral problems and poor study habits.

Danielle's problems continued and she was eventually admitted to the psychiatric unit at DePaul Northshore Hospital in September 1988. Danielle was evaluated at this time and it was determined that she qualified for Louisiana's hospital/homebound program[2] as she had been admitted to DePaul Hospital. It was also determined, however, that Danielle was not suffering from a learning disorder. Although Danielle demonstrated little academic progress while at DePaul Hospital, she was able to satisfy the requirements of the eighth grade. Danielle was discharged from DePaul Hospital in the summer of 1989, after the Salleys were fully informed of their right under state and federal law to have Danielle formally evaluated to determine her eligibility for special educational services.[3]

The Salleys enrolled Danielle in another private school, St. Scholastic Academy, in the fall of 1989, but she was re-admitted to DePaul Hospital in January 1990, after she developed a substance abuse problem and failed several courses. Danielle completed the ninth grade in DePaul Hospital as a hospital/homebound patient. After Danielle was discharged from DePaul Hospital in the summer of 1990, the Salleys sought to re-enroll Danielle in the St. Tammany

---

[2]Louisiana's hospital/homebound program allows children to receive special educational services while they are hospitalized or confined to their homes because of health or emotional problems. *See* La. Bulletin 1706 § 449.

[3]From this point on, the Salleys do not deny that they were informed of their rights under state and federal law at every appropriate juncture in Danielle's educational history—the district court documented at least seven occasions when the Salleys were presented with formal, written notification of their rights.

public school system.

St. Tammany school officials screened Danielle prior to the school year and determined that she did not qualify for special educational services. The Salleys were then informed of their right to request a formal evaluation. Instead of requesting a formal evaluation, the Salleys instead approached a school psychologist and expressed their concern regarding Danielle's ability to handle a regular curriculum. Danielle attended approximately three days of classes at St. Tammany before an interim IEP conference was held on August 28, 1990. The Salleys disagreed with the interim IEP proposed by St. Tammany because Danielle was to receive instruction in a common resource room with other children. The Salleys instead demanded residential placement for Danielle pending a full evaluation. St. Tammany rejected this proposal and the Salleys withheld their consent for a full evaluation of Danielle.

Due to her continuing difficulties, Danielle was again admitted to DePaul Hospital in September 1990. On October 6, 1990, the Salleys exercised their right to request a due process hearing to review Danielle's educational placement. In January 1991, while the due process hearing was pending, the Salleys sent Danielle to the Darrow School, a residential facility in New York. Before Danielle was able to complete her first semester at the Darrow School, she was again admitted to DePaul Hospital on May 17, 1991. The Salleys re-enrolled Danielle in the Darrow School in the fall of 1991, but then transferred her to the Meeting High School in New

5

Hampshire, another private residential facility, that same fall. Danielle eventually graduated from Meeting High School in December, 1993.

This matter was initially heard before a due process hearing officer pursuant to the Salleys' request of October 6, 1990. After two days of testimony, the hearing officer recessed the hearing so that a formal evaluation of Danielle could be conducted. Prior to the evaluation ordered by the hearing officer, Danielle had not been formally evaluated since she had moved to Louisiana. Those informal evaluations and screenings which had been conducted by doctors at DePaul Hospital and by school officials at St. Tammany prior to this time had not resulted in Danielle being diagnosed as learning disabled because she consistently tested at or above her grade level.

After the evaluation, a formal IEP conference was held and St. Tammany drafted a proposed IEP. The Salleys rejected the proposed IEP as it did not provide residential placement for Danielle. The hearing officer eventually denied the Salleys' request for residential placement for Danielle after concluding that St. Tammany's proposed IEP met IDEA's requirements and that the proposed IEP was less restrictive than the requested residential placement. The Salleys appealed the hearing officer's decision to a state level review panel. The review panel upheld the hearing officer's conclusion that St. Tammany's proposed IEP was appropriate and less restrictive than the residential placement sought by the Salleys. The Salleys then filed suit in district

6

court pursuant to IDEA's provision for judicial review. 20 U.S.C. § 1415(e)(2). The district court rejected most of the Salleys' claims, but found that St. Tammany had committed certain procedural violations of the Act. This appeal followed.

## II. STANDARD OF REVIEW

The district court's decision that an IEP fulfills the requirements of IDEA is a mixed question of fact and law and, as such, we subject this determination to a *de novo* review. *Christopher M. v. Corpus Christi Indep. Sch. Dist.,* 933 F.2d 1285, 1289 (5th Cir.1991) (citations omitted). In this regard, we must remain mindful of our proper role in this area:

> Congress left the choice of educational policies and methods where it properly belongs—in the hands of state and local school officials. Our task is not to second-guess state and local policy decisions; rather, it is the narrow one of determining whether state and local school officials have complied with the Act.

*Daniel R.R. v. State Bd. of Educ.,* 874 F.2d 1036, 1048 (5th Cir.1989). The district court's underlying factual findings are subject to the clearly erroneous standard. *Christopher M.,* 933 F.2d at 1289 (citation omitted).

For the reasons given below, we reverse in part and affirm in part the district court's finding that St. Tammany committed certain procedural violations of IDEA; we affirm the finding that Danielle was not harmed as a result of the violation that did occur. We affirm the district court's determination that the IEP proposed by St. Tammany was sufficient under IDEA. We also affirm the district court's finding that the Salleys are not entitled to an award of attorneys' fees.

7

III. PROCEDURAL VIOLATIONS

A. Whether Procedural Violations Occurred

The district court found that St. Tammany had committed the following procedural violations: (1) Danielle was not evaluated or placed on an IEP when she moved from Pennsylvania and first enrolled at Carolyn Park Elementary School in May 1985; (2) Danielle was not evaluated by St. Tammany when she returned to the public school system during the 1986-1987 school year; and (3) the Salleys were not provided with written notice of their rights under IDEA by St. Tammany at a sufficiently early date. *See Salley,* 1993 WL 386299 at *7-*10. We find that the district court clearly erred with respect to the first two findings, and we affirm the last finding.

1. May 1985

Turning first to the issue of Danielle's initial enrollment in May 1985, we take note of the district court's findings regarding the time constraints facing St. Tammany: At the time of Danielle's initial enrollment at Carolyn Park, only fourteen school days remained of the 1984-85 school year. Federal and state regulations, however, allow schools thirty days to hold a meeting to develop an IEP once it is determined that a child needs special education services. *See* 34 C.F.R. § 300.343(c); La. Bulletin 1508. The time constraints involved in this case were further exacerbated by the fact that Pennsylvania school officials did not forward Danielle's official records until after the end of the 1984-85 school year—although Mrs. Salley did provide St. Tammany

8

with an unofficial copy of Danielle's records upon Danielle's enrollment.

Then, before Danielle could be evaluated in the fall of 1985, the Salleys unilaterally removed Danielle from the public school system, severed all lines of communication with public school officials, and enrolled Danielle in a private school for the 1985-86 school year.[4] Under these circumstances, we cannot uphold the finding that St. Tammany violated IDEA by failing to evaluate Danielle or place her on an IEP before the conclusion of the 1984-85 school year.[5]

2. Fall 1986

Second, we find that the district court clearly erred when it found that St. Tammany had procedurally violated IDEA by failing to

---

[4]In light of the fact that the private school wherein the Salleys enrolled Danielle, Lourdes, offered no special education services, the district court concluded that the Salleys may have withdrawn Danielle from St. Tammany for the specific purpose of avoiding a formal evaluation:

> Considering Mrs. Salley's concerns regarding the development of an IEP program for Danielle who was a bright child, the decision to withdraw her from the public school system during the summer of 1985, was more likely motivated by her concern that upon evaluation, Danielle might indeed be placed in [a learning disabilities] classroom at Carolyn Park Elementary with slow learners.

1994 WL 148721, at *5.

[5]The district court cited *Jackson v. Franklin County Sch. Bd.,* 806 F.2d 623, 628 (5th Cir.1986), in support of its holding that the school district was obligated to either enroll Danielle in a special educational curriculum or convene an IEP conference before the end of the 1985-86 school year. 1993 WL 386299, at *9 n. 71. *Jackson* is distinguishable, however, as in that case "over a month of school still remained in the spring term." 806 F.2d at 628.

evaluate Danielle when she returned to the public school system in the fall of 1986. Where, as here, a child is not currently enrolled in special education,[6] Louisiana law does not require the initiation of an individual evaluation unless a parent, the school system, or a hearing officer has requested such an evaluation. La. Bulletin 1706 § 431(A). None of these parties requested an evaluation in this case.

The district court found, moreover, that St. Tammany could not be faulted for failing to request that Danielle be evaluated in the fall of 1986: At this time, the bulk of credible evidence indicated that Danielle was not learning disabled under Louisiana law. As the district court found, "[t]he resounding opinion of the educational professionals rendering evaluation and/or diagnostic services to Danielle up until this time i.e., May 1990, was that she was not learning disabled within the meaning of Louisiana law and thus did not qualify for special education or related services." 1994 WL 148721, at *15.

The district court further found that an educational strategy, instead of a formal IEP, was prepared for Danielle upon her re-enrollment in the fall of 1986 at the direction of the Salleys because the Salleys were loath to stigmatize Danielle.[7] Although

_____

[6]As discussed above, the district court found that Lourdes, the private school where Danielle was enrolled prior to her return to St. Tammany, did not offer any special educational services. 1994 WL 148721, at *5.

[7]The district court found:

> Mrs. Salley's close cooperation with [St. Tammany] to the end of accommodating Danielle in a regular

10

Danielle's school performance slipped during the period that this informal arrangement was in place, the district court nonetheless concluded that Danielle received adequate educational benefits during this time.[8]

> classroom in conjunction with her later statements regarding placing a bright student such as Danielle in [a learning disabilities] classroom with slow learners, have convinced the Court that from the outset Mrs. Salley was "anti-IEP," and thus, did not request a formal educational evaluation of Danielle or an interim IEP. It is this Court's opinion that even if Danielle's teachers at Slidell Junior High had recommended early on that she be fully evaluated and/or suggested an interim IEP for Danielle, considering Mrs. Salley's mind-set she would not have consented to such an evaluation or an interim IEP.

1994 WL 148721, at *10.

[8]As the district court found:

> [T]he uncontested fact that Danielle progressed from the sixth to the eighth grade at Slidell Junior High with passing marks in combination with the psychoeducational evaluation/assessment conducted by Dr. Margaret Hagan in April of 1988 ... noting that Danielle was functioning at or above grade level in every subject, demonstrate that Danielle derived educational benefits from the modified regular educational program implemented by the teachers and school officials at Slidell Junior High in cooperation with Mrs. Salley....
>
>     ....
>
>     ... Danielle's below average but passing final performance marks during the seventh grade at Slidell Junior High appeared to be due to a combination of her lack of effort, refusal to turn in the required assignments, an "oppositional" component to her personality quite possibly stemming from personal problems at home with her parents, and not the result of the allegedly inadequate educational program devised by Slidell Junior High school officials/teachers in cooperation with Mrs. Salley.

1994 WL 148721, at *8, *14.

11

3. Failure to Notify

We affirm the district court's finding that St. Tammany violated the procedures of IDEA by failing to provide the Salleys with formal notice of their rights under the Act in May 1985. We reverse, however, the district court's finding that St. Tammany violated IDEA by failing to notify the Salleys of their rights when Danielle re-enrolled in the fall of 1986.

Turning first to Danielle's initial enrollment in May 1985, we find that St. Tammany was required to notify the Salleys of the Act's protections under the facts of this case, even though there was insufficient time in which to prepare an IEP in May 1985. "Surely parents should, and are expected to, vigilantly oversee their handicapped child's educational progress. However, under the Act the burden rests squarely on the school or agency to safeguard handicapped children's rights by informing their parents of those rights." *Jackson v. Franklin County Sch. Bd.,* 806 F.2d 623, 629 (5th Cir.1986). Section 1415 states, in pertinent part, that a state is required to provide

> (C) written prior notice to the parents or guardian of the child whenever such agency or unit—
>
> (i) proposes to initiate or change, or
>
> (ii) refuses to initiate or change, the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child;
>
> (D) procedures designed to assure that the notice required by clause (C) fully informs the parents or guardian ..., unless it clearly is not feasible to do so, of all the procedures available pursuant to this section.

20 U.S.C. § 1415(b)(1)(C)-(D).

12

In this case, Danielle had been diagnosed as learning disabled and was receiving educational services in Pennsylvania pursuant to an IEP immediately prior to her enrollment at Carolyn Park in May 1985. While this fact did not necessarily obligate St. Tammany to continue those services, St. Tammany's discontinuance of those services did, at least, obligate St. Tammany to inform the Salleys of their rights under IDEA.[9] In short, we agree with the district court's holding that a state is obligated under IDEA to follow the Act's procedural requirements when a child has been determined to be handicapped under another state's laws, even though that child has not been identified as learning disabled under the state's own laws. Our holding is, however, limited to situations such as this one, where a child has recently moved from a state where he or she was receiving special educational services pursuant to an IEP. In this situation, the second state must inform the parents or guardian of the child if that second state proposes to change "the identification, evaluation, or educational placement of the child." 20 U.S.C. § 1415(b)(1)(C). Notice of such change is required even in situations where the child would never have qualified for special educational services under the

---

[9]That there was insufficient time in which to evaluate or prepare a new IEP for Danielle does not excuse St. Tammany. St. Tammany could have continued to provide special educational services to Danielle in conformity with her last Pennsylvania IEP for the remainder of the 1985-86 school year. Furthermore, notice is required here as students in Louisiana may receive special educational services on an interim basis where time does not permit an in-depth evaluation—but parental approval, and hence notice, is required for the interim placement. See La. Bulletin 1706 § 416.

second state's laws.

We find, however, that Danielle's re-enrollment in the fall of 1986 did not obligate St. Tammany to inform the Salleys of the Act's protections. The procedural safeguards of § 1415 are designed to protect "children with disabilities and their parents or guardians." 20 U.S.C. § 1415(a). The preliminary evaluations and screenings of Danielle that had been conducted in Louisiana as of the fall of 1986 did not reveal any evidence of a learning disability. Although Danielle later required hospitalization, in part because of emotional difficulties, and although Danielle was later diagnosed as suffering from dyslexia, the record indicates that she was not suffering from these problems in the fall of 1986. Furthermore, when Danielle re-enrolled in the fall of 1986, she had most recently attended Lourdes, where there was no IEP in place and where she did not receive special educational services. For these reasons, the procedural protections provided by the Act did not apply to her at this time and St. Tammany can not be faulted for failing to follow those procedures.

As the issue is not properly before us, we express no opinion regarding whether St. Tammany may have violated its responsibility to search for children suspected of being in need of special educational services in this case. *See* La. Bulletin 1706 §§ 411-12.

We agree with the district court's conclusion that, under the facts of this case, St. Tammany is liable for failing to provide the Salleys with notice of IDEA's procedural safeguards when

14

Danielle was initially enrolled in May 1985; we reverse the district court's finding that St. Tammany is liable for failing to notify the Salleys of their rights when Danielle was re-enrolled in the fall of 1986.

B. Appropriate Remedy

Despite its findings regarding these procedural violations, the district court awarded only nominal damages to the Salleys after concluding that the violations did not affect the Salleys' decisions regarding the education of Danielle. The district court reached this conclusion after first finding that the Salleys were very familiar with the IEP process, as they had been exposed to it on three previous occasions in Pennsylvania. The district court further found that, despite their familiarity with the IEP process, the Salleys did not request that Danielle be evaluated to determine her eligibility for special educational services, nor did the Salleys request that an IEP or an interim IEP be prepared, once they had moved to Louisiana and enrolled Danielle in Carolyn Park Elementary School. Evidently, the Salleys did not want an IEP prepared for Danielle because they were afraid of the impact that an IEP would have on Danielle's education. In Mrs. Salley's own words: " "I knew IEPs could be done, but to me an IEP just means going in a classroom for learning disabled kids. Usually those classrooms are usually and honestly for slow kids.' " 1994 WL 148721, at *5 (quoting the testimony of Mrs. Salley).

Based upon these findings, which we do not find to be clearly erroneous, we must affirm the conclusion of the district court that

the procedural violation committed by St. Tammany did not affect the Salley's decisions regarding Danielle's education.[10] Although St. Tammany did not advise the Salleys of their right to have Danielle formally evaluated at the time of her initial enrollment at Carolyn Park, the Salleys were already well aware of this right, given their past experiences in Pennsylvania. St. Tammany's procedural violations therefore can not be said to have harmed Danielle. The district court acted correctly when it awarded only nominal damages to the Salleys.

## IV. SUFFICIENCY OF THE PROPOSED IEP

In brief, IDEA provides federal money to states in order to assist them in providing "a free appropriate public education" to children with disabilities. 20 U.S.C. § 1400(c). The federal funding is conditioned upon a state's compliance with the Act's provisions. 20 U.S.C. § 1416. In *Board of Educ. v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), the Supreme Court provided the following two-part test to determine whether a state has met the requirements of IDEA: "First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive

---

[10]This conclusion is bolstered by the district court's finding that the Salleys were later provided with written notification of their rights, on at least seven occasions, but that the Salleys nonetheless never requested that Danielle be evaluated or that an IEP be prepared for her. 1994 WL 148721, at *21. "[E]ven after having been thoroughly notified of their rights, the Salleys chose to skirt the system, and chart the course of Danielle's educational history without taking advantage of their rights." *Id.* at *19.

16

educational benefits?" *Id.* at 206-07, 102 S.Ct. at 3051 (footnotes omitted).

The Act seeks to ensure that each disabled child receives a free appropriate public education by requiring the preparation of an IEP. 20 U.S.C. § 1401(a)(18). The Act defines an IEP as follows:

> The term "individualized education program" means a written statement for each child with a disability developed in any meeting by a representative of the local educational agency ..., the teacher, the parents or guardian of such child, and, whenever appropriate, such child, which statement shall include—
>
> (A) a statement of the present levels of educational performance of such child,
>
> (B) a statement of annual goals, including short-term instructional objectives,
>
> (C) a statement of the specific educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs,
>
> (D) a statement of the needed transition services for students beginning no later than age 16 ... before the student leaves the school setting,
>
> (E) the projected date for initiation and anticipated duration of such services, and
>
> (F) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved....

20 U.S.C. § 1401(a)(20). The Supreme Court has held, however, that the Act does not require a state to maximize each disabled child's educational potential. *Rowley,* 458 U.S. at 200, 102 S.Ct. at 3047-48. Rather, the IEP need only be "reasonably calculated to enable the child to receive educational benefits." *Id.* at 207, 102 S.Ct. at 305 (footnote omitted).

17

Turning to the IEP proposed by St. Tammany, we agree with the district court's finding that it satisfies the Act's requirements. The proposed IEP sought, in part, to provide: (1) individualized instruction in problem areas, particularly writing; (2) oral, untimed testing; (3) academic subjects one subject at a time, at a pace set by Danielle; (4) an hour of individualized counseling twice a week, as needed; and (5) enrollment in a certain number of regular classes with non-exceptional children. We have previously held that the Act creates a presumption in favor of the educational plan established by the IEP and that the party attacking the IEP bears the burden of demonstrating its inappropriateness. *See Christopher M.,* 933 F.2d at 1290-91 (citations omitted). It is evident that the Salleys have not carried their burden here—especially in light of the Salleys' primary challenge to the IEP.

The Salleys attempt to argue that only an IEP which provided for the residential placement of Danielle could be viewed as reasonably calculated to enable Danielle to receive educational benefits. The district court found, however, that "many of Danielle's difficulties stem from her relationship with her family and that such matters are more properly resolved through counseling rather than the removal of the child from the household." 1993 WL 386299, at *11. Even if we were to assume *arguendo* that a residential placement could provide the best possible education for

18

Danielle,[11] we would not necessarily be required to reject St. Tammany's proposed IEP. *See Rowley,* 458 U.S. at 200, 102 S.Ct. at 3047-48. Moreover, our conclusion finds additional support in the Act's requirement that an IEP must seek to educate a child in the least restrictive environment. 20 U.S.C. § 1412(5);[12] *see also* La. Bulletin 1706 § 448. The IEP proposed by St. Tammany, which would have allowed Danielle to live at home and attend some regular classes, is obviously less restrictive than the residential placement in New York and New Hampshire sought by the Salleys.

We accordingly affirm the district court's finding that the IEP proposed by St. Tammany passes muster under IDEA.

## V. PREVAILING PARTIES

The Salleys also contest the district court's decision to deny them attorneys' fees. The Act provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a

---

[11]This is an assumption which is not supported by the record—Danielle required readmittance to DePaul Northshore Hospital, for example, before she could complete even one semester at the Darrow School.

[12]Section 1412(5) requires participating states, in pertinent part, to establish

> procedures to assure that, to the maximum extent appropriate, children with disabilities ... are educated with children who are not disabled, and that special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(5)(B).

19

disability who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B). The district court's decision regarding the award of attorneys' fees under IDEA will be overturned only for an abuse of discretion. *Fontenot v. Louisiana Bd. of Elementary & Secondary Ed.,* 835 F.2d 117, 120 (5th Cir.1988).

In the context of determining "prevailing party" status under 42 U.S.C. § 1988,[13] the Supreme Court has stated that "a plaintiff "prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* --- U.S. ----, ----, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). In this case, the Salleys did not obtain residential placement for Danielle, which was their primary objective. The Salleys' sole victory in the district court—a finding that St. Tammany had procedurally violated the Act—did not materially alter the legal relationship between parties, as evidenced by the Salleys' receipt of only nominal damages. Danielle was given a full evaluation as a result of the due process hearing initiated by the Salleys, but this result could have been obtained at any time and the Salleys were well aware of this fact. Accordingly, we find that the district court did not abuse its discretion when it denied the Salleys' request for an award of attorney's fees.

---

[13]We have previously held that we may look to other fee shifting statutes, such as 42 U.S.C. § 1988, for guidance in interpreting the meaning of "prevailing party." *See, e.g., Angela L. v. Pasadena Indep. Sch. Dist.,* 918 F.2d 1188, 1193 (5th Cir.1990).

## VI. CONCLUSION

For the reasons set forth above, we REVERSE in part, and AFFIRM in part, the decision of the district court.