**SAMUEL TYLER W., by Next Friends HARVEY W. and Debbie M., Plaintiff,**

v.

**NORTHWEST INDEPENDENT SCHOOL DISTRICT, Defendant.**

No. 4:01–CV–0285–A.

United States District Court, N.D. Texas, Fort Worth Division.

April 22, 2002.

K. Marvin Adams, Fillmore Law office, Fort Worth, TX, Gary S. Meyerson, Mayerson & Associates, New York City, for plaintiff.

Cynthia S. Buechler, Buechler & Assoc., Austin, TX, for defendant.

## MEMORANDUM OPINION
### and ORDER

McBRYDE, District Judge.

Came on for consideration the above-captioned action wherein Samuel Tyler W., by next friends Harvey W. and Debbie M., is plaintiff, and Northwest Independent School District is defendant. The court, having considered the record, including the record of the underlying administrative hearing, and applicable authorities, makes the following determinations.

### I.

#### Nature of the Case and Underlying Proceedings

This is an appeal from the decision of a special education hearing officer in a proceeding filed under the Individuals With Disabilities Education Act, 20 U.S.C. §§ 1400–85 ("IDEA"). The administrative process was begun by a request filed February 3, 2000, for a due process hearing. Plaintiff sought a determination that de-

fendant had failed to provide him a free appropriate public education ("FAPE") in violation of IDEA. After a series of delays, due primarily to the unavailability of plaintiff's lead counsel, the hearing commenced August 23, 2000, and continued through August 25, then reconvened November 14. and continued through November 17, 2000. On February 26, 2001, the special education hearing officer issued her decision in favor of defendant.

On April 11, 2001, plaintiff filed his original complaint in this action. By agreement of the parties, the case is being decided on cross-motions for judgment as a matter of law. *See Hunger v. Leininger,* 15 F.3d 664, 669 (7th Cir.1994) (explaining the process of review in the district court of an IDEA case).

## II.

### *Standard of Review*

■ IDEA provides that:

[T]he court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(e)(2). Although "due weight" is to be given to the administrative proceedings, the district court's review is "virtually *de novo.*" *Teague Indep. Sch. Dist. v. Todd L.,* 999 F.2d 127, 130–31 (5th Cir.1993). The role of the court is not to second-guess the state and local school policy decisions, but instead, to determine whether state and local officials have complied with IDEA. *Flour Bluff Indep. Sch. Dist. v. Katherine M.,* 91 F.3d 689, 693 (5th Cir.1996), *cert. denied,* 519 U.S. 1111, 117 S.Ct. 948, 136 L.Ed.2d 836 (1997). The Supreme Court has explained that:

Therefore, a court's inquiry in suits brought under § 1415(e)(2) is twofold. First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

*Board of Educ. v. Rowley,* 458 U.S. 176, 206–07, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (footnotes omitted). The FAPE described by the Act does not have to be the best possible one or one that will maximize a student's educational potential; rather, the Act guarantees only a basic floor of opportunity. *Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.,* 118 F.3d 245, 247–48 (5th Cir.1997).

■ In the Fifth Circuit, the party attacking the appropriateness of an individualized education program ("IEP") established by a local educational agency bears the burden of showing why the IEP and resulting placement were inappropriate under IDEA. *Id.* at 252. Thus, plaintiff has the burden of showing that defendant did not comply with the procedures set forth in the Act or that, even if the procedures were proper, the challenged IEPs were not reasonably calculated to provide him with a meaningful educational benefit. *Id.; Salley v. St. Tammany Parish Sch. Bd.,* 57 F.3d 458, 467 (5th Cir. 1995). If plaintiff meets those burdens, he must further show that his alternative placement was appropriate in order to be entitled to reimbursement therefor. *Teague* 999 F.2d at 131–32.

■ The law can only mandate equal opportunity, not equal results. *McDowell v. Fort Bend Indep. Sch. Dist.,* 737 F.Supp. 386, 389 (S.D.Tex.1990). No school can guarantee that an IEP will be successful. *Rowley,* 458 U.S. at 192, 102 S.Ct. 3034; *Board of Educ. v. Steven L.,*

898 F.Supp. 1252, 1261 (N.D.Ill.1995), *vacated as moot*, 89 F.3d 464 (7th Cir.1996), *cert. denied*, 520 U.S. 1198, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997). The fact that another plan might work as well or even better does not mean that defendant has failed to provide defendant an FAPE. Rather, defendant does what is required by providing personalized instruction with sufficient support services to permit plaintiff to benefit educationally from that instruction. *Rowley*, 458 U.S. at 203, 102 S.Ct. 3034.

### III.

#### *Pertinent Background Facts*

Plaintiff was born on February 16, 1995. In July of 1998, when plaintiff was almost three and one-half, his mother took him to see a neurologist, who, after observing plaintiff for approximately five minutes, opined that he was autistic. He recommended that plaintiff be taken to the Child Study Center and that his parents contact defendant to place him in special services. An appointment was made for plaintiff to see Dr. Mauk at the Child Study Center on September 2, 1998. On August 20, plaintiff went to Justin Elementary School to be assessed. Defendant determined that plaintiff was eligible for special education and related services due to a speech impairment.

On August 26, 1998, defendant convened an admission, review, and dismissal ("ARD") committee meeting. Plaintiff's parents participated along with members of defendant's staff to develop an IEP for plaintiff. They agreed that plaintiff would be placed in the preschool program for children with disabilities ("PPCD") and provided speech therapy services for the 1998–99 school year. The PPCD was a full-day program. The ARD also recommended that plaintiff receive a comprehensive assessment with autism evaluation, which was to be completed by October 15,

1998. The report of the meeting reflects that "general education classroom" was considered, but was found to be "not appropriate due to young age." Tr. Vol. 6 at 485.

Plaintiff began school on August 31, 1998. Defendant's staff wanted to give him an opportunity to become acclimated to school before beginning testing. On October 1, 1998, plaintiff was evaluated by the school psychologist, speech pathologist, and a diagnostician using the Childhood Autism Rating Scale ("CARS"). His total score placed him in the non-autistic range. On October 5, plaintiff's mother took him out of school. During the fall semester, plaintiff was absent from school twenty-four out of fifty-one days. Plaintiff had been making progress prior to his removal.

On November 11, 1998, the ARD committee convened again. At that meeting, plaintiff's mother disclosed that he had been diagnosed as having Pervasive Developmental Disorder ("PDD"). She refused to provide any reports regarding the diagnosis. (On November 4, 1998, plaintiff's father had signed a release for defendant to obtain information from Dr. Mauk, but called several hours later to revoke his permission. Dr. Mauk had recommended that plaintiff be placed in the PPCD program.) Although plaintiff's CARS score had fallen in the non-autistic range, because of the new information, the committee decided that further testing should be performed, to be completed by January 15, 1999. Tr. Vol. 6 at 429. Plaintiff's mother and her in-home consultant, who was present at the meeting, agreed to the plan.

On December 3, 1998, defendant's staff conducted a Psycho–Educational Profile—Revised ("PEP–R") on plaintiff. The PEP–R reflected that plaintiff had PDD. On December 18, 1998, an occupational therapist evaluated plaintiff and determined that although he had some delay in fine motor skills development, he did not

need occupational therapy services because his needs could be met through current programming.

On January 27, 1999, the ARD committee convened to discuss test results and new information and to determine plaintiff's educational needs. The committee added the eligibility category of autism to plaintiff's eligibility determination. The goals and objectives previously set forth in plaintiff's IEP remained unchanged by the addition of the autism eligibility determination. The committee recommended an in-home training evaluation and a functional behavioral assessment. Plaintiff's parents reported that plaintiff received intensive in-home behavioral therapy and that they wanted his home program to continue. Defendant's staff expressed a desire to have plaintiff return to the PPCD classroom.

The ARD commit convened again on March 30, 1999. At that time, the functional behavioral assessment had not been completed because plaintiff had not been in school and could not be observed. Plaintiff was then attending Children's Courtyard and his parents agreed that he could be observed there so that the assessment could be completed. The ARD committee reconvened on April 5, 1999, to discuss the functional behavioral assessment and in-home training evaluation. A behavior intervention plan was developed and accepted. Plaintiff's parents requested forty hours of in-home training. They continued to refuse to bring plaintiff to school.

On June 10, 1999, the ARD committee met to develop plaintiff's annual IEP and to consider extended-year services ("EYS"). EYS was not recommended at that time.

On June 18, 1999, the ARD committee reconvened to discuss plaintiff's needs and develop an IEP for the 1999–2000 school year. Although an IEP was agreed upon, plaintiff's parents did not accept the educational instruction offered by defendant. Plaintiff's parents requested at least twenty-five hours of weekly in-home training. Defendant's staff considered that to be excessive and continued to offer six hours of in-home training.

On August 16, 1999, the ARD committee met at plaintiff's parents' request to review his in-home goals and objectives. The committee agreed that the previous IEP would remain in effect but plaintiff's in-home training goals and objectives were revised. Plaintiff's parents continued to disagree that the six hours of in-home training provided for plaintiff was sufficient. They requested twenty-five hours.

On September 27, 1999, the ARD committee met again, this time to discuss a physical therapy evaluation of plaintiff and to determine his eligibility for physical therapy services. Physical therapy was added to plaintiff's previous IEP. Plaintiff's parents brought an outside assessment to the committee meeting, but refused to release it or share its contents. Plaintiff attended the preschool program during the 1999–2000 school year. On February 3, 2000, his parents filed their request for a due process hearing.

The ARD committee met twice in May 2000, but was unable to reach any agreement as to continued services for plaintiff. Ultimately, plaintiff's parents determined that they would not allow him to return to school until the due process hearing had been completed. Defendant was at all times ready, willing, and able to work with plaintiff's parents to develop an appropriate IEP for the 2000–2001 school year.

## IV.

### The Hearing Officer's Decision

The hearing officer found that defendant had complied with the procedural requirements of IDEA and had developed IEPs reasonably calculated to enable

plaintiff to receive educational benefits. Instead of focusing on the merits of the decision, plaintiff's first response is to attack the integrity of the hearing officer. He urges that because she ruled in favor of school districts in twenty-three of thirty cases she had heard, she was predisposed to decide in favor of defendant and against plaintiff.[1] The argument is entirely without merit.

The record reflects that the hearing officer bent over backwards to accommodate plaintiff's lead counsel. She granted numerous continuances at his behest. Moreover, because of his conduct, the proceedings took twice as long as they should have. The hearing officer's pleas that plaintiff's lead counsel allow his local counsel, who was familiar with the local rules, to participate fell on deaf ears. Plaintiff's lead counsel was obstreperous, argumentative, and frequently mischaracterized testimony.[2]

■ Plaintiff's brief continues the trend found in the administrative hearing transcript of misleading statements and arguments. Plaintiff's primary ground is that defendant violated the procedural safeguards of IDEA by failing to have a regular education teacher in attendance at several ARD committee meetings. As noted, *supra*, the record reflects that plaintiff was not eligible for general education services due to his young age. Plaintiff has no credible explanation for why the absence

of such a teacher materially affected any of the proceedings. Instead, he misleadingly urges that any procedural inadequacy, i.e., technicality, will throw defendant out of compliance with IDEA and make it absolutely liable to fund plaintiff's private education. That is not the test. Rather, even the case cited by plaintiff holds that procedural flaws do not automatically require the finding that an FAPE has been denied; only if the procedural inadequacies result in the loss of educational opportunity or seriously infringe the parents' opportunity to participate in the IEP formulation process is an FAPE denied. *W.G. v. Bd. of Trustees*, 960 F.2d 1479, 1484 (9th Cir. 1992). A more serious point is the allegation that defendant refused to provide plaintiff's parents with copies of assessments before ARD committee meetings. If that indeed occurred, it had the potential to affect the parents' participation.[3] However, the record reflects that plaintiff's parents very vocally participated in every ARD committee meeting and that they were not hindered by any alleged withholding of documents.

After using approximately ten pages of his brief (pages 10 through 19) to discuss his two grounds for relief, plaintiff devotes sixteen pages to an all-out attack on defendant and its personnel. That plaintiff falls back on such a tactic belies the merit of his claims.[4] In sum, plaintiff's argument seems to be that since his parents made it

---

1. It is ironic that plaintiff points out that the hearing officer refused to take a break when plaintiff's mother began crying during testimony. Her crying occurred during testimony about the behavior of her husband. One could easily surmise that she was crying because she recognized the truth of the testimony. And, the fact that plaintiff's father did not testify would lead one to the conclusion that he did, in fact, behave as described, that is, in a violent and threatening manner at home and at one or more ARD committee meetings.

2. As a result, the testimony he adduced was not as persuasive as that adduced by defendant.

3. The record reflects that one member of defendant's staff understood it to be the policy of defendant not to release reports prior to committee meetings so that the reports could be explained when they were distributed.

4. Granted, some of plaintiff's complaints have merit. It seems, for instance, that plaintiff's mother especially struck a nerve in David Collyer, the Director of Special Education.

impossible for him to attend school, defendant should have to pay for him to be educated at home. None of the cases he cites support the proposition that parents alone can decide whether the FAPE requirement is met.

Finally, plaintiff devotes the remainder of his seventy-six-page brief to an exposition on the treatment of autism. Here, his thesis is that any fool would know that there is only one method "proven" (that is, about which extensive studies have been published in peer review journals) to be effective in treating children with autism. And, because defendant refuses to devote itself exclusively to following that methodology, it has failed to provide plaintiff with an FAPE. In other words, plaintiff puts the burden of proof on defendant to demonstrate that its methodology "was equal to or better than" plaintiff's program. Pl. Br. at 70. Methodology, however, is not an issue for the court to resolve. *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1044 (5th Cir.1989) (Congress chose to leave selection of education policy and methods to state and local school officials); *Lachman v. Ill. State Bd. of Educ.*, 852 F.2d 290, 297 (7th Cir.1988). As defendant has repeatedly noted, the law does not require that it provide plaintiff a Cadillac, although that is surely what every parent would want. IDEA simply mandates a "basic floor of opportunity" to receive an educational benefit. *Rowley*, 458 U.S. at 201, 102 S.Ct. 3034. That defendant uses a variety of methodologies does not mean that it has failed to meet the floor.

In sum, the records establishes beyond doubt that plaintiff's parents decided in the fall of 1998 to implement their own program for his education. They became ardent adherents of the Lovaas methodology and did not want any other program implemented. They demanded that defendant's in-home trainers follow their plan and none other. They were of the opinion that the trainers could teach them nothing; therefore, parent training time should be spent at their team meetings so that trainers could be trained in the parents' system. Plaintiff's parents removed him from the PPCB program without giving defendant a fair chance to work with plaintiff. When plaintiff was allowed to attend the pre-kindergarten program, he did very well and received significant educational benefit. There is no reason to believe that he would not have continued to receive significant educational benefit in the kindergarten program. His parents simply refused to allow him to participate.

## V.

### ORDER

For the reasons discussed herein,

The court ORDERS and DECLARES that defendant complied with the procedures set forth in IDEA; that the IEPs developed through the Act's procedures were reasonably calculated to enable plaintiff to receive educational benefits; and, that plaintiff is not entitled to be reimbursed for his alternative placement.

The court ORDERS that the decision of the hearing officer be, and is hereby, affirmed.

The court further ORDERS that all claims for relief made in this action by plaintiff against defendant be, and are hereby, dismissed.

---

One could conclude that she made him feel insecure. There is no indication, however, that his unprofessional response to either of plaintiff's parents in any way affected the IEPs developed for plaintiff. The remainder of defendant's staff selflessly devoted themselves to serving plaintiff's best interest despite their discomfort with plaintiff's parents.