Santina **POLERA**, a disabled Student,
Plaintiff–Appellee–Cross–
Appellant,

v.

The **BOARD OF EDUCATION OF THE NEWBURGH ENLARGED CITY SCHOOL DISTRICT**, Defendant–Appellant–Cross–Appellee,

William J. Swart, Individually and in his capacity as Associate Superintendent, The Sarah N. Snowden Chapter of the National Honor Society, Defendants.

Docket Nos. 01–7400(L), 01–7439(XAP).

United States Court of Appeals,
Second Circuit.

Argued: Nov. 7, 2001.

Decided: April 29, 2002.

Alex Smith, Gurda, Gurda & Smith, Middletown, NY (Robert N. Isseks, Middletown, NY, of counsel), for Plaintiff–Appellee–Cross–Appellant Santina Polera.

Mark C. Rushfield, Shaw & Perelson, Highland, NY, for Defendant–Appellant–Cross–Appellee The Board of Education of the Newburgh Enlarged City School District.

Jay Worona, Albany, NY, for Amicus New York State School Boards Association, Inc.

Before: MINER and STRAUB, Circuit Judges.[1]

STRAUB, Circuit Judge.

This appeal requires us to refine our definition of the circumstances in which a disabled student must exhaust her administrative remedies before suing a school district for its alleged failure to provide appropriate educational services. Defendant–Appellant Board of Education of the Newburgh Enlarged City School District ("Board") appeals from the partial denial of its motion for summary judgment and the entry of judgment for Plaintiff–Appellee Santina Polera ("Polera") following a bench trial in the United States District Court for the Southern District of New York (Mark D. Fox, *Magistrate Judge*). Polera cross-appeals from the District Court's ruling *in limine* precluding testimony from her proposed expert witnesses. We hold that the District Court lacked subject matter jurisdiction over Polera's claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, because she failed to exhaust her administrative remedies. Therefore, we do not reach the merits of Polera's claims or her cross-appeal.

## BACKGROUND

Polera, who is visually impaired, was a resident of the Newburgh Enlarged City School District ("District") in New York State until her graduation from the District's public high school in 1997. Polera alleges that the Board, which operates the public schools in the District, failed to provide her with the free appropriate public education, including study materials, compensation for tutoring, and recognition of academic achievements, to which she was entitled as a disabled student.

The Board repeatedly provided Polera's mother with notice of the administrative remedies available to her for deficiencies in her daughter's education. But, as both parties agree, Polera never sought relief for her grievances through the administrative process. Instead, she filed a complaint in the United States District Court for the Southern District of New York on December 27, 1996, during her senior year of high school. She named as defendants the Board, the Sarah H. Snowden Chapter of the National Honor Society, and William J. Swart, an Associate Superintendent in the District.[2] The complaint includes claims under the ADA, 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution, the equal protection and due process clauses of the New York State Constitution, and New York State common law. As relief, the complaint requests: (1) a declaratory judgment that Polera's rights have been violated; (2) injunctive relief bestowing various academic honors of

---

1. Judge Barrington D. Parker, Jr., who was originally assigned to the panel for this appeal, recused himself and did not participate. The appeal was heard and decided by the panel's remaining two judges pursuant to this Court's Local Rule § 0.14(b).

2. Polera voluntarily discontinued her claims against the National Honor Society. The District Court granted Swart's motion for summary judgment and dismissed all claims against him, and Polera has not appealed that ruling.

which she allegedly was deprived; (3) reimbursement of educational expenses from 1986 to 1996; (4) attorneys' fees and costs; (5) unspecified compensatory damages; and (6) unspecified punitive damages.

On August 19, 1999, the District Court granted in part and denied in part the defendants' motion for summary judgment. As to Polera's claim that the Board failed to provide educational services, the District Court excused Polera's failure to exhaust her administrative remedies, finding that it would have been futile for her to do so. The District Court found that it therefore had subject matter jurisdiction over that component of Polera's case. As to all claims except the ADA and Rehabilitation Act claims against the Board, the District Court granted summary judgment to the defendants. The dismissed causes of action included all claims under 42 U.S.C. § 1983.

On August 17, 2000, the District Court granted the Board's motion *in limine,* precluding testimony by Polera's proposed education experts. On February 27, 2001, the District Court issued a decision following a full bench trial. The District Court found intentional discrimination against Polera by the Board in violation of the ADA and Section 504 of the Rehabilitation Act, granted judgment to Polera, and awarded her $30,000 in compensatory damages for her emotional distress.

The Board filed a timely notice of appeal, claiming the District Court erred in exercising subject matter jurisdiction and in ruling in Polera's favor on her claims. Polera cross-appealed, challenging only the District Court's preclusion of her expert witnesses.

**3.** Neither party disputes that during her primary and secondary education, Polera was a

### DISCUSSION

■ Until we determine whether the District Court properly exercised subject matter jurisdiction over Polera's claims against the Board under the ADA and the Rehabilitation Act, we cannot address the merits of those claims. When reviewing a district court's determination of whether it has subject matter jurisdiction, we examine legal conclusions *de novo* and factual determinations for plain error. *Phillips v. Saratoga Harness Racing, Inc.,* 240 F.3d 174, 177 (2d Cir.2001). Here, the focal point of our inquiry must be Polera's admitted failure to exhaust the administrative remedies available to her through the state education system before she filed suit in federal court. As we discuss below, the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1490, provides that potential plaintiffs with grievances related to the education of disabled children generally must exhaust their administrative remedies before filing suit in federal court, even if their claims are formulated under a statute other than the IDEA (such as the ADA or the Rehabilitation Act). Therefore, in this case, we must ascertain whether the IDEA exhaustion requirement applies and, if so, whether Polera's failure to exhaust administrative remedies deprived the District Court of subject matter jurisdiction.

### I. The IDEA and Exhaustion of Administrative Remedies

The IDEA, previously known as the Education of the Handicapped Act ("EHA") and amended several times since its inception in 1970, mandates federal grants to states to provide disabled children[3] with "a free appropriate public education" in the least restrictive appropriate environment. *See* 20 U.S.C.

disabled child within the meaning of the IDEA.

§§ 1400(d)(1)(A), 1401(8), 1411(a)(1) & 1412(a)(5)(A). Educators and parents of a child covered by the IDEA must jointly develop an "individualized education program" ("IEP") for each year of the child's education. *See* 20 U.S.C. §§ 1401(11), 1414(d). According to the statute, an IEP must include, in writing, "a statement of the child's present levels of educational performance ...; a statement of measurable annual goals, including benchmarks or short-term objectives ...; a statement of the special education and related services and supplementary aids and services to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child ... to advance appropriately toward attaining the annual goals ...; [and] the projected date for the beginning of the services and modifications ... and the anticipated frequency, location, and duration of those services and modifications." *Id.* § 1414(d)(1)(A). The IEP is the central mechanism by which public schools ensure that their disabled students receive a free appropriate public education.

The IDEA requires that states offer parents of a disabled student an array of procedural safeguards designed to help ensure the education of their child, *see id.* § 1415(a), including the right "to examine all records relating to [the] child and to participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child, and to obtain an independent educational evaluation of the child," *id.* § 1415(b)(1), written notice prior to any changes in the child's identification, evaluation or educational placement, *id.* § 1415(b)(3), "an opportunity to present complaints with respect to" such matters, *id.* § 1415(b)(6), and, whenever any such complaint is made, the right to "an impartial due process hearing ... by the State educational agency or by the local educational agency," with corresponding rights to be accompanied and advised by counsel, to present evidence and cross-examine witnesses, to receive a written record of proceedings, and to receive written findings of fact and decisions.[4] *Id.* § 1415(f)(1) & (h).

4. Under New York State's regulations, either "[a] parent or a school district may initiate a hearing on matters relating to the identification, evaluation or educational placement of a student with a disability, or the provision of a free appropriate public education to the child." 8 N.Y.C.R.R. § 200.5(i)(1). The parent or attorney representing the student must provide detailed written notice of their complaint to the school district, *id.* § 200.5(i)(1)(i), whereupon "[t]he board of education shall arrange for such a hearing to be conducted" and shall "immediately appoint an impartial hearing officer" from a *rotating* list of officers, *id.* § 200.5(i)(3). Several rules apply to the conduct of the hearing: for example, the parties "may be accompanied and advised by legal counsel," the parties "shall have an opportunity to present evidence, compel the attendance of witnesses and to confront and question all witnesses at

the hearing," a written record of proceedings shall be maintained and made available to the parties, interpreters shall be provided at district expense, the hearing shall be closed to the public unless the parent requests otherwise, and the hearing officer shall render a written decision "not later than 45 days after the receipt by the board of education of a request for a hearing or after the initiation of such a hearing by the board." *Id.* §§ 200.5(i)(3)(iii)-(xiv); 200.5(i)(4).

New York also provides an appeals process: "[a] review of the decision of a hearing officer ... may be obtained by either the parent or the board of education by an appeal to a State review officer of the State Education Department." *Id.* § 200.5(j)(1). Generally, a final written decision by the review officer must be rendered within thirty days of the receipt of a request for a review. *Id.* § 200.5(j)(2).

■ Although the IDEA provides for a federal cause of action to enforce such rights, it imposes a broadly applicable requirement that plaintiffs first exhaust administrative remedies:

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*

*Id.* § 1415(*l*) (brackets in original, emphasis added). A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction. *See Hope v. Cortines,* 69 F.3d 687, 688 (2d Cir.1995). In order to ascertain whether Polera was required to exhaust administrative remedies before bringing suit, we must determine whether this action—which includes claims under the ADA and the Rehabilitation Act—seeks

"relief that is also available under [the IDEA]." 20 U.S.C. § 1415(*l*).

## II. Availability Under the IDEA of the Relief Sought by Polera

### A. Compensatory and Punitive Damages

In her complaint, Polera seeks, *inter alia,* compensatory and punitive damages. While this Court has found damages to be an available remedy in actions brought pursuant to 42 U.S.C. § 1983 for violations of the IDEA,[5] this appeal presents a different question: are damages available under the IDEA itself?[6]

The statute is silent as to the availability of damages. While nothing in the language of the IDEA limits the types of relief recoverable for violations of the statute, nor does the statute anywhere mention damages. *See* 20 U.S.C. § 1415(i)(2)(B)(iii) (the court "shall grant such relief as the court determines is appropriate"). The IDEA's central mechanism for the remedying of perceived harms is for parents to seek changes to a student's program; as described above, many provisions of the statute focus on this administrative process. However, because the statutory language and structure offer no unequivocal answer to our question regarding damages, we turn to case law.

In *Burlington School Committee v. Massachusetts Department of Education,*

---

**5.** We have held that monetary damages are available in claims brought pursuant to 42 U.S.C. § 1983 for denial of access to administrative remedies under the IDEA's predecessor statute, the EHA. *Quackenbush v. Johnson City Sch. Dist.,* 716 F.2d 141, 148 (2d Cir. 1983), *cert. denied,* 465 U.S. 1071, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984). District courts in this Circuit have followed *Quackenbush,* holding that damages are available on claims brought under Section 1983 for violations of the IDEA. *See, e.g., M.H. v. Bristol Bd. of Educ.,* 169 F.Supp.2d 21, 29–30 (D.Conn. 2001); *R.B. v. Bd. of Educ. of the City of New*

York, 99 F.Supp.2d 411, 418 (S.D.N.Y.2000); *Cappillino v. Hyde Park Cent. Sch. Dist.,* 40 F.Supp.2d 513, 515–16 (S.D.N.Y.1999). However, as noted above, all of Polera's Section 1983 claims were dismissed on summary judgment, and she has not appealed that decision. Hence, *Quackenbush* and its progeny do not dictate the outcome of this appeal.

**6.** Although the Board conceded at oral argument that damages are not available under the IDEA, our inquiry does not end with that concession.

471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), the Supreme Court held that, in granting relief under the EHA, courts can "order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act." *Id.* at 369, 105 S.Ct. 1996. Some have read the *Burlington* opinion as casting doubt on the availability of damages (as distinguished from equitable remedies such as reimbursement or other restitution) under the IDEA. *See, e.g., Crocker v. Tenn. Secondary Sch. Athletic Ass'n,* 980 F.2d 382, 386 (6th Cir.1992) ("In *Burlington* ..., the Court appears to interpret § 1415(e)(2) as not allowing 'damages' in general but as allowing 'reimbursement [of] ... expenses....'"). The *Burlington* Court did state that while courts have "broad discretion" to grant relief, that relief must "be 'appropriate' in light of the purpose of the Act" which is "to provide handicapped children with 'a free public education which emphasizes special education and related services designed to meet their unique needs.'" *Burlington,* 471 U.S. at 369, 105 S.Ct. 1996. The Court also noted that the reimbursement contemplated by the Act is not a form of damages: "Reimbursement merely requires [the defendant] to belatedly pay expenses that it should have paid all along...." *Id.* at 370–71, 105 S.Ct. 1996. But the Court did not explicitly address the availability of damages under the EHA.

We have not yet squarely confronted the issue of whether damages · are available under the IDEA itself. In *Hope v. Cortines,* 872 F.Supp. 14, 15 (E.D.N.Y.1995), the plaintiffs brought suit under the ADA and other statutes, not including the IDEA, seeking injunctive relief and damages. Without addressing the availability of damages under the IDEA, the District

Court held that the injunctive relief that the plaintiffs sought "is precisely the type of remedy best fashioned by the educational experts skilled in developing such programs and provides a textbook example of the types of cases justifying administrative exhaustion." *Id.* at 21. Therefore, the District Court held, the plaintiffs sought relief that was available under the IDEA, and should be required to exhaust administrative remedies. *Id.* at 21, 23, 872 F.Supp. 14. Considering the case on appeal, we noted that the District Court had "determined that the relief plaintiffs seek is available under the IDEA," and we affirmed "on the opinion of the District Court." *Hope v. Cortines,* 69 F.3d 687, 688 (2d Cir.1995). More recently, the District Court in *Wenger v. Canastota Central School District,* 979 F.Supp. 147, 152 (N.D.N.Y.1997), flatly stated that "[t]he IDEA does not provide for compensatory money damages," and we affirmed in an unpublished summary order, 208 F.3d 204 (2d Cir.2000) (table).

District courts in our Circuit generally have held that damages are not available under the IDEA. *See Butler v. South Glens Falls Cent. Sch. Dist.,* 106 F.Supp.2d 414, 419 (N.D.N.Y.2000) (holding that relief available under the IDEA "does not include compensatory or punitive damages"); *Schuler v. Bd. of Educ. of Cent. Islip Union Free Sch. Dist.,* No. 96 Cv. 4702, 2000 WL 134346, at *8 n. 15 (E.D.N.Y. Feb.1, 2000) (holding that monetary damages are unavailable under the IDEA); *"BD" v. DeBuono,* 130 F.Supp.2d 401, 427–28 (S.D.N.Y.2000) (assuming without discussion that damages are unavailable under the IDEA); *Stellato v. Bd. of Educ. of the Ellenville Cent. Sch. Dist.,* 842 F.Supp. 1512, 1516–17 (N.D.N.Y.1994) (holding that damages are unavailable under the IDEA except in two "exceptional circumstances": where there is a danger

to the physical health of the child or where the school district acts in bad faith).

At least five other courts of appeals—the Fourth, Sixth, Seventh, Eighth, and Ninth Circuits—have found damages unavailable under the IDEA. For example, in *Charlie F. v. Board of Education of Skokie School District*, 98 F.3d 989 (7th Cir. 1996), the Seventh Circuit found that "the structure of the statute—with its elaborate provision for educational services and payments to those who deliver them—is inconsistent with monetary awards to children and parents.... [W]e conclude that damages are not 'relief that is available under' the IDEA. This is the norm for social-welfare programs that specify benefits in kind at public expense, whether medical care or housing or, under the IDEA, education." *Id.* at 991 (citation omitted).

Similarly, in *Sellers v. School Board of Manassas, Va.*, 141 F.3d 524, 527 (4th Cir.), *cert. denied*, 525 U.S. 871, 119 S.Ct. 168, 142 L.Ed.2d 137 (1998), the Fourth Circuit rejected plaintiff's damages claim, holding that "[t]ort-like damages are simply inconsistent with IDEA's statutory scheme."

> The touchstone of a traditional tort-like remedy is redress for a broad range of harms 'associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages.' By contrast, the touchstone of IDEA is the actual provision of a free appropriate public education.... Compensatory or punitive damages would transform IDEA into a remedy for pain and suffering, emotional distress, and other consequential damages caused by the lack of a free appropriate public education. Such a result would be inconsistent with the structure of the statute, which so strongly favors

the provision of and, where appropriate, the restoration of educational rights.

*Id.* (citation omitted); *see also Witte v. Clark County Sch. Dist.*, 197 F.3d 1271, 1275 (9th Cir. 1999) (finding damages unavailable under the IDEA and noting that the phrase "appropriate relief ... is usually construed as a mere grant of jurisdiction to enforce and supplement the administrative procedures for identification, evaluation, and placement of the child, and not of authority to award retrospective damages" (citation and internal quotation marks omitted)); *Heidemann v. Rother*, 84 F.3d 1021, 1033 (8th Cir. 1996) (holding that "general and punitive damages for the types of injuries alleged by plaintiffs are not available under the IDEA"); *Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 980 F.2d 382, 386–87 (6th Cir. 1992) (stating that "we do not find case authority interpreting the [EHA] to allow an award of general damages for emotional injury or injury to a dignitary interest" and holding that the plaintiff "cannot recover general damages under the EHA" or under Section 1983 for violations of the EHA).

Two courts of appeals—the Third and Fifth Circuits—have addressed the issue without endorsing the view that damages are never available under the IDEA. In *W.B. v. Matula*, 67 F.3d 484 (3d Cir. 1995), after finding that damages may be sought under Section 1983 for violations of the IDEA, *id.* at 494–95, the Third Circuit noted that the "IDEA itself makes no mention of such relief," *id.* at 496. However, the court ultimately held: "In the matter before us, it would be futile, perhaps even impossible, for plaintiffs to exhaust their administrative remedies because the relief sought by plaintiffs in this action"—which included damages—"was unavailable in IDEA administrative proceedings." *Id.* The Fifth Circuit, in *Salley v. St. Tammany Parish School Board*, 57 F.3d 458 (5th

Cir.1995), affirmed a damages award for a violation of the IDEA, but the damages were merely nominal and the court did not discuss the availability of damages under the IDEA as a general matter. *Id.* at 466. Because *Matula* reached no definitive conclusion on the general availability of damages under the IDEA and *Salley* was silent on the issue, neither case undercuts the position staked out by the Fourth, Sixth, Seventh, Eighth, and Ninth Circuits: that damages are unavailable under the IDEA itself.

■ We agree with the prevailing opinion of the other Circuits and the district courts in our Circuit. The purpose of the IDEA is to provide educational services, not compensation for personal injury, and a damages remedy—as contrasted with reimbursement of expenses—is fundamentally inconsistent with this goal. The availability of damages also would undercut the IDEA's carefully structured procedure for administrative remedies, a mechanism that encourages parents to seek relief at the time that a deficiency occurs and that allows the educational system to bring its expertise to bear in correcting its own mistakes. We therefore hold that monetary damages are not available under the IDEA. However, as discussed below, we do not believe that this holding leads inexorably to the conclusion that because Polera seeks relief that is not available under the IDEA, she was not required to exhaust her administrative remedies.

B. *Equitable Relief*

In addition to damages, Polera's complaint seeks several forms of equitable relief: a declaration that her rights were violated, injunctive relief bestowing various academic honors, reimbursement of edu-

cational expenses from 1986 to 1996, and attorneys' fees. Of these forms of relief, all that are not moot[7] appear to be available under the IDEA.

The relevant state and local administrative agencies have the capacity to find that an IEP is deficient, has not been complied with, or that similar wrongs have been committed. *See* 20 U.S.C. § 1415(h)(4) (parties to an administrative proceeding under the IDEA have "the right to written ... findings of fact and decisions" on any complaint about the provision of a free appropriate public education). Similarly, the administrative system, which is designed to ensure that disabled students receive the free appropriate public education to which they are entitled, *see* 20 U.S.C. § 1415(f) & (h), seems uniquely well positioned to guarantee that Polera receives proper academic recognition. For example, the administrators could have determined that Polera's school failed to comply with its policies and procedures governing academic honors. Reimbursement of educational expenses also is a form of relief available under the IDEA. *See, e.g., Burlington Sch. Comm. v. Mass. Dep't of Educ.*, 471 U.S. 359, 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985); *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir.1998). Lastly, the IDEA authorizes the award of reasonable attorneys' fees to the parents of a disabled child who is the prevailing party. 20 U.S.C. § 1415(i)(3)(B).

### III. Applicability of the Exhaustion Requirement

■ We now consider whether the exhaustion requirement of the IDEA should apply to Polera's claims despite the fact

---

**7.** Polera's request for admission into the Sarah N. Snowden Chapter of the National Honor Society is moot because Polera volun-

tarily discontinued her claims against the National Honor Society.

that some of the relief sought—damages—is not available under the IDEA.

■ The IDEA's exhaustion requirement was intended to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances. The exhaustion requirement "prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes." *Heldman v. Sobol,* 962 F.2d 148, 159 (2d Cir.1992). "Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Hoeft v. Tucson Unified Sch. Dist.,* 967 F.2d 1298, 1303 (9th Cir.1992); *see also Crocker v. Tenn. Secondary Sch. Athletic Ass'n,* 873 F.2d 933, 935 (6th Cir.1989) ("States are given the power to place themselves in compliance with the law. . . . Federal Courts—generalists with no experience in the educational needs of handicapped students—are given the benefit of expert fact-finding by a state agency devoted to this very purpose."). In other words, the administrative system is uniquely well suited to review the content and implementation of IEPs such as Polera's, and to determine what changes, if any, are needed. The administrative process would have been particularly valuable here because, as the record reveals, the IEPs prepared for Polera were vague and generalized at best, in some cases offering little detail beyond a requirement that the school district provide a "curriculum" to Polera.

Courts in the Second Circuit have required exhaustion of administrative remedies even where damages were held to be unavailable through the administrative process. In such cases, plaintiffs were not permitted to evade the IDEA's exhaustion requirement merely by tacking on a request for money damages. In *Buffolino v. Board of Education of Sachem Central School District at Holbrook,* 729 F.Supp. 240 (E.D.N.Y.1990), the court rejected just such an argument by the plaintiffs, stating, "[i]f the Court were to hold that plaintiffs in this case are excused from exhausting their remedies because adequate relief could not be obtained, plaintiffs could avoid administrative procedures merely by asking for relief that administrative authorities could not grant." *Id.* at 247; *see also* "*BD*" *v. DeBuono,* 130 F.Supp.2d 401, 428 (S.D.N.Y.2000) ("[P]laintiffs should not be allowed to avoid the administrative requirements of IDEA by claiming only monetary damages or other relief not available under IDEA."); *Hope v. Cortines,* 872 F.Supp. 14, 17 (E.D.N.Y.) (a plaintiff "cannot escape IDEA's exhaustion requirement by drafting a complaint artfully avoiding an IDEA claim where IDEA offers plaintiffs the very relief they seek"), *aff'd,* 69 F.3d 687 (2d Cir.1995).

The opinion of the Seventh Circuit Court of Appeals in *Charlie F. v. Board of Education of Skokie School District,* 98 F.3d 989 (7th Cir.1996) is particularly instructive. In *Charlie F.,* the plaintiff, like Polera, sued for damages under the ADA, the Rehabilitation Act, Section 1983, and state tort law, but did not bring an IDEA claim. The Seventh Circuit held that damages are not available under the IDEA, but nevertheless applied the IDEA's exhaustion requirement to the plaintiff's claim. *Id.* at 991–93. The court noted that "[t]he statute speaks of available relief, and what relief is 'available' does not necessarily de-

pend on what the aggrieved party wants." *Id.* at 991. Giving a practical interpretation to the meaning of "available relief," the court stated: "[T]he theory behind the grievance may activate the IDEA's process, even if the plaintiff wants a form of relief that the IDEA does not supply.... We read 'relief available' to mean relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers." *Id.* at 991–92. The court then considered a hypothetical that parallels the facts of Polera's case:

> Suppose a school fails to provide a reader for a blind pupil, who as a result falls behind. The IDEA provides relief: the school can assign a reader to the pupil for the future and can provide tutors and other special instruction until the pupil catches up. If disgruntled parents spurn this solution and demand compensation, the response should be that they cannot ignore remedies available under the IDEA and insist on those of their own devising; under the IDEA, educational professionals are supposed to have at least the first crack at formulating a plan to overcome the consequences of educational shortfalls. That the educational problem has consequences outside school ... can't be enough to avoid the statutory system.... By making an unreasonable or unattainable demand parents cannot opt out of the IDEA.

*Id.* at 992. The court held that the plaintiff's demand for damages did not excuse him from the IDEA's exhaustion requirement, and remanded with instructions to dismiss the plaintiff's claim for failure to pursue administrative remedies. *Id.* at 993.

We find Polera's situation materially indistinguishable from that of the plaintiff in *Charlie F.*, and we apply the same reasoning. The IDEA is intended to remedy precisely the sort of claim made by Polera: that a school district failed to provide her with appropriate educational services. The fact that Polera seeks damages, in addition to relief that is available under the IDEA, does not enable her to sidestep the exhaustion requirements of the IDEA. Where, as here, a full remedy is available at the time of injury, a disabled student claiming deficiencies in his or her education may not ignore the administrative process, then later sue for damages. Therefore, we hold that, absent an applicable exception, Polera was required to exhaust her administrative remedies.

## IV. The Futility Exception to the Exhaustion Requirement

■■■ We recognize that the IDEA's exhaustion requirement does not apply "in situations in which exhaustion would be futile because administrative procedures do not provide adequate remedies." *Heldman v. Sobol*, 962 F.2d 148, 158 (2d Cir. 1992); *see also* H.R.Rep. No. 99–296, at 7 (1985); *Mrs. W. v. Tirozzi*, 832 F.2d 748, 756 (2d Cir.1987). Polera argues that this "futility" exception applies to her claims for several reasons: according to her, it would have been pointless to seek administrative relief from the very entities that had failed to implement the clearly-stated requirements of the IEPs, the administrative process could not provide the relief that she sought, and, in any case, relief would not have been made available promptly.[8] But, as we discuss below, Pol-

---

**8.** In *Honig v. Doe*, 484 U.S. 305, 327, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), which was decided under the EHA, the Supreme Court indicated that the burden of demonstrating futility rests with the party seeking to avoid the exhaustion requirement. *See also, e.g., Rose v. Yeaw*, 214 F.3d 206, 211 (1st Cir. 2000). Although it appears that we have not yet addressed this issue under either the EHA or the IDEA, we consider the *Honig* rule fully

era's IEPs in fact did not clearly state the obligations of the school, and the administrative process could have provided appropriate and expeditious relief.

In arguing that the futility exception should apply in this case, Polera relies on the following statement of Senator Paul Simon, a co-sponsor of two of the acts that formed the foundation of the IDEA: "It is important to note that there are certain situations in which it is not appropriate to require the exhaustion of [IDEA] administrative remedies before filing a civil law suit. These include complaints that ... an agency has failed to provide services specified in the child's individualized educational program." 131 Cong. Rec. § 10396-01 (1985); *see also* H.R. Rep. 99–296, at 7 (1985) (exhaustion not required where "it would be futile to use the due process procedures (e.g., an agency has failed to provide services specified in the child's individualized educational program ...).")). The District Court in this case, noting Senator Simon's views, excused exhaustion to the extent that Polera's claim was based on the "district's failure to provide promised services."

Were we to accept Senator Simon's broad language without qualification, a plaintiff could plausibly frame any IEP-related claim as one of "implementation" and thereby sidestep the IDEA's exhaustion requirement. Under such an interpretation, the futility exception would swallow the exhaustion requirement. Moreover, the exhaustion requirement is predicated on Congress's belief, expressed through the statutory scheme, that administrative agencies can "get it right": that the agencies themselves are in the optimal position to identify and correct their errors and to fine-tune the design of their programs. Sweeping exceptions to the ex-

haustion requirement are at odds with this belief.

■ Therefore, a court must closely examine a plaintiff's claims before concluding that they involve nothing more than "implementation" of services already spelled out in an IEP. Here, Polera's assertion that her claim relates solely to implementation does not make it so. A review of the record reveals that the Board's alleged failure to provide services is inextricably tied to the content of the IEPs and therefore is much more than a failure of implementation. Simply put, Polera's IEPs failed to spell out the services to be provided. The three relevant IEPs—those that the District Court found to have been violated by the Board—include long lists of abstract goals (for example, "will successfully accomplish the required language arts skills necessary to complete the grade 12 curriculum") but are virtually silent as to what materials or services the school should provide. In order to identify those services (for example, to ascertain the content of a "curriculum"), we are left either to speculation or to reliance on extrinsic evidence, as illustrated by the opinion of the District Court. This is not the sort of case described by Senator Simon, in which a school has failed to implement services that were specified or otherwise clearly stated in an IEP. Polera's claim unavoidably encompasses both a failure to provide services and a significant underlying failure to specify what services were to be provided.

Polera also relies on the Sixth Circuit's decision in *Covington v. Knox County School System,* 205 F.3d 912 (6th Cir. 2000). In *Covington,* the mother of a disabled student sued the school district under 42 U.S.C. § 1983, alleging constitution-

applicable. Accordingly, Polera bears the burden of proving that it would have been

futile for her to seek relief through the administrative process.

al violations of her son's rights but not raising IDEA claims. In her complaint, the plaintiff asserted that school officials had locked the student inside a small, dark, unheated, unventilated cell for long periods of time as a disciplinary measure. In considering the applicability of the IDEA exhaustion requirement, the court held "that in the unique circumstances of this case—in which the injured child has already graduated from the special education school, his injuries are wholly in the past, and therefore money damages are the only remedy that can make him whole—proceeding through the state's administrative process would be futile and is not required before the plaintiff can file suit in federal court." *Id.* at 917. Despite certain similarities between *Covington* and the instant case—both Polera and the plaintiff in *Covington* had already graduated and complain of past, not ongoing, conduct—Polera's claim is distinguishable from the "unique circumstances" of *Covington*, which in any case is not binding on this Court. Although the Sixth Circuit focused on the fact that the plaintiff student had graduated, damages would have been the only adequate remedy even had he sought immediate relief at the time of the wrongdoing. Nothing could "undo" the harm that he had suffered. In contrast, had Polera pursued administrative procedures at the time of the alleged wrongdoing, she could have obtained the materials she needed and, perhaps, remedial tutoring or schedule adjustments to undo the effects of the wrong. For Polera, unlike the plaintiff in *Covington*, a fully effective remedy was available at the time; she simply chose not to pursue it.

The supposed slowness of the administrative process also does not justify a finding of futility in this case. Under New York State's regulations, a hearing officer must render a decision within 45 days of the receipt by the board of education of a parent's request for a hearing. *See* 8 N.Y.C.R.R. § 200.5(i)(4). In contrast, Polera's federal case is still pending, more than five years after she filed suit. While the administrative process might not have delivered relief as swiftly as Polera hoped, it certainly could have compensated for the relatively minor delay with additional remedial educational services. We also consider it incongruous that Polera waited years before pursuing any remedy, yet now claims that the remedy available to her *at the time*—the administrative process—would have been too slow.

Finally, we reiterate our holding that disabled-student plaintiffs, like Polera, should not be permitted to "sit on" live claims and spurn the administrative process that could provide the educational services they seek, then later sue for damages. Were we to condone such conduct, we would frustrate the IDEA's carefully crafted process for the prompt resolution of grievances through interaction between parents of disabled children and the agencies responsible for educating those children. The fact that the administrative process could not provide damages does not render Polera's claim futile; she could have obtained complete relief at the time, through changes to her IEPs, additional educational services, and, if necessary, remedial education. *See Charlie F.,* 98 F.3d at 992 ("relief available" means "relief for the events, condition, or consequences of which the person complains," not necessarily "the kind of relief the complaint demands").

Because we find that the District Court lacked subject matter jurisdiction over Polera's claims, we need not address the Board's arguments challenging the District Court's finding of intentional discrimination and entry of judgment for Polera. Nor need we consider Polera's cross-ap-

peal regarding the preclusion of her expert witnesses.

### CONCLUSION

Polera was required to exhaust her administrative remedies before bringing a claim in federal court. She admittedly failed to do so. Therefore, the District Court lacked subject matter jurisdiction over her claims. We vacate the judgment and remand to the District Court with an instruction to dismiss the complaint.