Arley McADAMS, III and Rose McAdams on behalf of Arley McAdams IV, their minor child, Plaintiffs,

v.

The BOARD OF EDUCATION OF THE ROCKY POINT UNION FREE SCHOOL DISTRICT, Defendant.

No. 01CV5448(ADS)(ETB).

United States District Court, E.D. New York.

Aug. 14, 2002.

The Law Office of Jo Anne Simon by Jo Anne Simon, and Bernadine R. Jacobs, of counsel, Brooklyn, NY, for Plaintiffs.

Hamburger, Maxson & Yaffe, LLP by Richard Hamburger, Lane T. Maxson, and David H. Pearl, of counsel, Melville, NY, for Defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiffs Arley McAdams III and Rose McAdams (collectively, the "McAdams") bring this action on behalf of their son Arley McAdams IV ("Arley") alleging that the defendant the Board of Education of the Rocky Point Union Free School District (the "Rocky Point BOE")

failed to provide Arley with appropriate educational services in violation of the Individuals with Disabilities Education Act ("IDEA"), the Rehabilitation Act of 1973 (the "Rehabilitation Act"), the Americans with Disabilities Act (the "ADA") and the New York State Education Law. Presently before the Court is a motion by the Rocky Point BOE to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

The facts are taken from the complaint unless otherwise indicated. Arley is a sixteen year old boy who is classified as "Learning Disabled". In December of 1995, Arley enrolled in the fourth grade at the Joseph A. Edgar Intermediate School, which is part of the Rocky Point Union Free School District (the "School District"). At that time, the Rocky Point Committee on Special Education ("CSE") classified Arley as "Learning Disabled" based upon testing conducted by the Hauppauge School District which indicated weaknesses in the areas of reading and mathematics.

For the 1995–1996 school year, the CSE prepared an Individualized Education Program ("IEP") under which Arley would attend fourth grade with mainstream students and receive resource room services five times per week for forty minutes each day. *The Rocky Point Union Free School Dist. v. McAdams*, Independent Hearing, Record on Appeal, Vol. 2, Ex. R at 2 (2000). For the 1996–1997 school year, the CSE prepared an IEP in which Arley would attend fifth grade with mainstream students and continue to receive resource room services five times per week for forty minutes each day. *Id.* Ex. S at 1. While in the fifth grade, Arley encountered a group of fifth grade "bullies" who harassed and threatened him. During that time, these "bullies" beat up Arley inflicting bruises to

his arms and legs. Arley did not tell his parents about the "bullies" but instead told them that he suffered the bruises when he fell or bumped into something. However, Arley notified school officials of the "bullies" but the officials took no action to stop the harassment.

On April 2, 1997, five unnamed boys allegedly dragged Arley through the playground at his school. Two of the boys held him down while another kicked him in the groin and punched him. All five of the boys then took turns stepping on his hands and fingers. On November 25, 1997, unnamed individuals allegedly "attacked" Arley on the school bus. During that incident, the individuals clawed Arley severely and pulled out the small braid of hair at the back of his neck. On November 5, 1998, an unnamed student tackled Arley while he was playing soccer in a physical education class. As a result of that incident, Arley suffered a fractures to his neck, back and kneecap.

In November of 1998, the School District placed Arley in home instruction. Arley's home instruction involved various tutors meeting one on one with him five days a week. For the 1998–1999 school year, the CSE prepared an IEP which noted that the School District was providing Arley with home teaching as a result of the November 5, 1998 incident. *See id.* Ex. U at 1–2.

On April 22, 1999, the CSE conducted its annual review in order to prepare Arley's IEP for the 1999–2000 school year. *Id.* Ex. W. On that date, the Chairperson of the CSE, Gail Santo, advised the McAdams that the CSE intended to recommend that Arley return to a regular class with the support of the resource room once he was well enough physically to return to class. *Id.* at 21. For the 1999–2000 school year, the CSE prepared an IEP recommending that Arley be placed in the Rocky

Point High School for an extended school year term of ten months. *Id.* Ex. X at 5.

By letter dated May 18, 1999, the McAdams requested an impartial hearing to review the IEP for the 1999–2000 school year. *Id.* Joint Ex. 1. In their letter, the McAdams noted their disagreement with the CSE's recommendation which purportedly would place Arley in a regular eighth grade class in the Rocky Point Junior Senior High School including one period of resource room instruction per day. *Id.* As an alternative, the McAdams stated that they wanted Arley to attend a private or public school outside the School District. *Id.* Finally, the McAdams noted that the matter could be resolved without a hearing if the Rocky Point BOE agreed to reimburse them for the tuition and the transportation costs at the school of their selection. *Id.*

On July 1, 1999, a hearing was held before Impartial Hearing Officer Arthur Riegel ("Riegel"). *The Rocky Point Union Free School Dist. v. McAdams,* Independent Hearing, Record on Appeal, Vol. 1 at 11 (2000). However, the record does not reflect any findings or decision rendered by Riegel. On November 29, 1999, the Rocky Point BOE appointed Richard Thaler as the new Impartial Hearing Officer (the "IHO") to hear the McAdams' objection to the CSE's recommendation for the 1999–2000 school year. *Id.* at 12. The hearing was then re-scheduled from January 19, 2000 to February 17, 2000 and to March 24, 2000. *Id.* at 3. On April 14, 2000, the hearing commenced. *Id.* On that date, the parties agreed to extend the 45 day time limitation upon which a determination by the IHO must be rendered. *Id.* at 6. The hearing consisted of eleven days of testimony which ended on September 8, 2000. *Id.*

On October 16, 2000, the IHO issued his decision. *McAdams v. Bd. Of Ed. Of the Rocky Point Union Free School Dist.,* 01CV5448, Complaint, Ex. B (E.D.N.Y. Aug. 13, 2001). In his decision, the IHO noted the need for a psychological evaluation because Arley had not undergone such testing since he enrolled in the School District. *Id.* at 6. Also, the IHO noted that on July 27, 2000, he directed that the School District and the McAdams cooperate to have Arley undergo an neuropsychological evaluation, a test of written language and an independent speech and language evaluation in order to assure that the CSE prepare a workable IEP for the 2000–2001 school year. *Id.* However, the record does not reflect the results of these tests.

In addition, the IHO stated that the IEPs which ranged from school years 1995–1996 to 1999–2000 contained errors involving medical alerts and testing modifications. *Id.* at 7. In particular, Arley suffered from asthma but this was not noted as a medical alert in his IEP despite the fact that McAdams advised the School District of this condition. *Id.* Further, the IEPs noted that Arley had testing modifications such as that he should be allowed extended time to complete tests; should be tested in a separate location; and should have directions re-read to him before testing. *Id.* However, the IHO found that there was no testimony that established that Arley benefitted from these testing modifications. *Id.* The IHO then found that the School District failed to provide a free appropriate public education for Arley. *Id.* at 8. Also, the IHO noted that the McAdams lost faith in the School District's efforts to educate and protect Arley from harassment at the school. *Id.*

In his conclusions, the IHO stated in pertinent part:

> I can not sustain the recommendation of the CSE. The Rocky Point Jr/Sr High School is not the appropriate placement for [Arley] for school year 2000–2001.

The school district did not meet its burden of proof. [Arley] should continue on home tutoring until medically cleared to return to school and during this time period, school administrators and parents should locate an alternative appropriate educational placement, outside of the Rocky Point UFSD for the remainder of this school year ending June 2001. At that time, there should be a complete, thorough review and all relevant information and current data from the neuropsychological and speech/language evaluations should be supplied to the CSE for its consideration in preparing the IEP and placement recommendation for school year 2001–2002.

*Id.* at 9.

Following the IHO's decision, Arley remained in home instruction until November of 2000, when the McAdams enrolled him in Our Savior New American School which provided him with testing accommodations and one on one tutoring five times a week. During that time, the McAdams provided Arley with speech and language therapy and psychological counseling.

Sometime thereafter, the Rocky Point BOE appealed the IHO's decision to the New York State Education Department. In a decision dated April 12, 2001, State Review Officer Frank Munoz ("Munoz" or the "SRO") first found that the Rocky Point BOE was responsible for paying the costs of the evaluations that the IHO directed. *Id.* Ex. A at 6–7. In particular, the SRO found that a rational basis existed for the testing because there was a lack of current evaluative information about Arley which would be useful in determining an appropriate educational program for him. *Id.* Ex. A at 7. Second, the SRO found that the IHO exceeded his jurisdiction when he determined that the Rocky Point BOE failed to offer Arley an appropriate educational program for the 2000–2001 school year because an IEP for that school year was not before him. *Id.* In particular, the McAdams commenced the hearing to review the IEP for the 1999–2000 school year, not the 2000–2001 school year. *Id.* As such, the issue for the IHO to decide was whether the IEP for the 1999–2000 school year was appropriate for Arley. *Id.*

Third, the SRO found that the Rocky Point BOE failed to meet its burden that the IEP for the 1999–2000 school year provided an appropriate educational program for Arley. *Id.* at 8. The reason for this finding was that the information concerning Arley's current level of performance and special education needs was inadequate. In particular, it was noted that Arley's last individual psychological evaluation was more than four years old; the CSE failed to recommend that Arley receive counseling to improve his interpersonal skills; there was no evidence of progress reports from Arley's student tutors; the IEP included the results of a Stanford Achievement Test administered in April of 1999 but does not reveal the circumstances under which the examination was given; and the record failed to note the basis for the IEP's statement that described Arley's abilities, learning style, needs and rate of progress. *Id.* at 7–8.

Fourth, the SRO noted that there was no evidence of an IEP for the 2000–2001 school year in the record and thus no basis existed for the IHO to make a determination concerning the appropriate educational program for that school year or to direct the Rocky Point BOE to place the student in a specific program. *Id.* As such, the SRO annulled the IHO's decision concerning the 2000–2001 school year. *Id.* Fifth, the SRO noted that the evaluations ordered by the IHO were completed and it was the CSE's responsibility to consider the evaluations, secure current information about Arley's educational progress and recommend an educational program to ad-

dress his needs. *Id.* Until then, the SRO directed that Arley remain in his last agreed upon placement, namely home instruction. *Id.* Finally, the SRO directed that the CSE recommend an educational program for Arley for the remainder of the 2000–2001 school year within 20 days of the decision. *Id.*

On August 13, 2001, the McAdams initiated this lawsuit in the Eastern District of New York against the Rocky Point BOE, Munoz, and Richard P. Mills, the Commissioner of the New York State Education Department alleging that the defendants failed to provide Arley with appropriate educational services. In the Complaint, counts one, two and three allege violations under the IDEA, the Rehabilitation Act, the ADA and the New York State Education Law for failing to provide Arley with appropriate educational services. Count four sets forth a claim for "Hostile Environment" based on the defendants disregarding Arley's fears, physical injuries and reports of harassment which deprived him of a free and appropriate public education.

The McAdams seek the following relief: (1) annulling the SRO's decision that Arley's out of district placement ordered by the IHO could not be made without an IEP for the 2000–2001 school year; (2) upholding the SRO's finding that the School District failed to provide Arley with an appropriate IEP for the 1999–2000 school year; (3) granting reimbursements for Arley's tuition, books and uniforms for Our Savior New American School for the 2000–2001 school year; (4) granting reimbursement for speech and language services and therapeutic counseling provided to Arley; and (5) awarding attorneys' fees and costs. On October 31, 2001, the McAdams dismissed the action against Munoz and Mills without prejudice.

Presently before the Court is a motion by the Rocky Point BOE to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## II. DISCUSSION

### A. The Standard

When considering a motion for lack of subject matter jurisdiction under Rule 12(b)(1), the Court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional question. *Robinson v. Gov't of Malaysia,* 269 F.3d 133, 141 n. 6 (2d Cir.2001); *Antares Aircraft, L.P. v. Fed. Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds,* 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992); *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1130 (2d Cir.1976). Under Rule 12(b)(1), the Court must accept as true all material factual allegations in the complaint, but will not draw inferences favorable to the party asserting jurisdiction. *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998); *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992). Hearsay statements contained in affidavits may not be considered. *Kamen v. Am. Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986).

### B. The IDEA

Congress enacted the IDEA to ensure that children with disabilities receive "a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living . . . ." 20 U.S.C. § 1400(d)(1)(A). IDEA establishes an educational scheme which requires each state that receives federal education funds to prepare an Individualized Education Program ("IEP") for each disabled child. *Hope v. Cortines,* 872 F.Supp. 14, 16 (E.D.N.Y.1995) (citation omitted), *aff'd on*

*the opinion of the district court,* 69 F.3d 687 (2d Cir.1995).

The IEP should provide, among other things, the child's present performance level, goals and objectives, specific services that will permit the child to achieve those goals, and evaluation criteria and procedures to evaluate whether the child has met the goals outlined. 20 U.S.C. § 1414(d)(1)(A). "The IEP is the central mechanism by which public schools ensure that their disabled students receive a free appropriate public education." *Polera v. Bd. of Educ. of the Newburgh Enlarged City School Dist.,* 288 F.3d 478, 482 (2d Cir.2002).

The IDEA mandates that states "offer parents of a disabled student an array of procedural safeguards designed to help ensure the education of their child...." *Id.* "Primary among the procedural safeguards employed by IDEA is the requirement that states provide parents of disabled students the right to seek review of any decision concerning their children's education." *Hope,* 872 F.Supp. at 16. As such, parents may file complaints about "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). Parents must first seek review through an impartial hearing conducted by either the local school district or the state. *Id.* § 1415(f)(1). If the hearing is done by a local school district, the parents may appeal the decision to the state educational agency. *Id.* § 1415(g). Only after the parents have exhausted these procedures may they seek review in either federal or state court. *Id.* § 1415(*l*).

Congress permits states to fashion their own educational scheme to comply with the IDEA. *Heldman v. Sobol,* 962 F.2d 148, 152 (2d Cir.1992). This, New York has done. *Id.* In New York, the CSE, which is made up of individuals appointed by the board of education or the trustees of the school district, prepares the IEPs for disabled children. N.Y. Educ. Law § 4402(1)(b)(1). New York has a two-level system for the review of an IEP. First, a hearing officer, appointed by the board of education from a list of state-certified officers, conducts the initial hearing and makes a determination with regard to the action of the CSE. N.Y. Educ. Law § 4404(1). If unsatisfied with this determination, a party may then appeal the determination to an SRO. *Id.* § 4404(2).

"Although the IDEA provides for a federal cause of action to enforce such rights, it imposes a broadly applicable requirement that plaintiffs first exhaust administrative remedies...." *Polera,* 288 F.3d at 483. Indeed, "[a] plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction." *Id.* (citing *Hope v. Cortines,* 69 F.3d 687, 688 (2d Cir.1995)).

1. **The Applicability of the IDEA's Exhaustion Requirement to the Claims under the ADA and the Rehabilitation Act**

Where a plaintiff brings a claim under either the ADA or the Rehabilitation Act that seeks relief available under the IDEA, she or he must first exhaust the administrative remedies under the IDEA. *See Hope v. Cortines,* 69 F.3d 687, 688 (2d Cir.1995) (stating that litigants must "exhaust the IDEA's administrative procedures before bringing suit under the ADA to obtain relief that is available under the IDEA."); *Kielbus v. Wertheimer,* 01–1130, 2002 WL 24446, at \*3 (E.D.N.Y. Jan.4, 2002) (stating that claims under the ADA and the Rehabilitation Act "are subject to IDEA's exhaustion requirement if the relief sought is clearly available under IDEA."). To permit a plaintiff to frame a cause of action under a different federal

statute and thus avoid the exhaustion requirements defeats the purpose of the IDEA. *See Polera,* 288 F.3d at 489 (stating that a plaintiff may not sidestep the exhaustion requirement of the IDEA).

The ADA and the Rehabilitation claims seek relief for the alleged failure to provide Arley with appropriate educational services. The IDEA is precisely intended to remedy these types of claims. *See Polera,* 288 F.3d at 488 (stating that the IDEA was intended to remedy a claim where the plaintiff sought relief for a school district's alleged failure to provide her with appropriate educational services). Accordingly, absent an applicable exhaustion exception, the McAdams were required to exhaust their administrative remedies before bringing these claims.

### 2. The Requirement of Exhaustion under the IDEA

"The IDEA's exhaustion requirement was intended to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances." *Polera,* 288 F.3d at 487. "The exhaustion requirement 'prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes.'" *Id.* (citing *Heldman v. Sobol,* 962 F.2d 148, 159 (2d Cir.1992)). "Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Id.* (internal quotation marks and citations omitted).

The Second Circuit has recently stated:

> [T]he exhaustion requirement is predicated on Congress's belief, expressed through the statutory scheme, that administrative agencies can "get it right": that the agencies themselves are in the optimal position to identify and correct their errors and to fine-tune the design of their programs. Sweeping exceptions to the exhaustion requirement are at odds with this belief.

*Polera,* 288 F.3d at 489.

As noted, New York has fashioned its own educational scheme to comply with the IDEA. Within this scheme, New York has set forth the exhaustion requirements that must be met before an aggrieved party may appeal to the federal district court. First, if the recommendation of the CSE is not acceptable to the parents, the parents must notify the applicable board of education and that body must then appoint an impartial hearing officer to hear the appeal and make a determination. N.Y. Educ. Law § 4404(1). The parents are entitled to a determination by a hearing officer within 45 days after the board of education receives the request for a hearing or after the initiation of such a hearing by the board. N.Y. Comp.Codes R. & Regs. tit. 8, § 200.5(i)(4) (2001). If unsatisfied with this determination, a party may then appeal the determination to an SRO. N.Y. Educ. Law § 4404(2). The SRO must make a determination within 30 days after the receipt of a request for review. N.Y. Comp.Codes R. & Regs. tit. 8, § 200.5(j)(2) (2001). These two levels of review must be exhausted before an aggrieved party may commence an action in federal court. *See* N.Y. Comp.Codes R. & Regs. tit. 8, § 200.5(j)(3) (2001) & 20 U.S.C. § 1415(i)(2)(A).

### a. The IEP for the 1999–2000 School Year

 It is well-settled that only a party aggrieved by the findings and decision

of the SRO may commence an action in federal court. 20 U.S.C. § 1415(i)(2)(A) ("Any party aggrieved by the findings and decision made ... shall have the right to bring a civil action with respect to the complaint presented ... in any State court of competent jurisdiction or in a district court...."). *See also Antkowiak v. Ambach,* 838 F.2d 635, 641 (2d Cir.1988) (stating that a party may not seek to enforce favorable decisions under the IDEA since she or he is not aggrieved by such decisions); *A.T., I.T., Z.T. v. N.Y. State Educ. Dep't,* No. 98–4166, 1998 WL 765371, at *6 (E.D.N.Y. Aug.4, 1998) ("Since plaintiffs have not sought to challenge any of the state review officer's findings against them, they are before the Court solely for the purpose of enforcement, and cannot be characterized as aggrieved parties under the IDEA."). In this case, the SRO found that the Rocky Point BOE failed to prove that the IEP for the 1999–2000 school year provided Arley with an appropriate educational program. As such, the McAdams are not aggrieved parties in connection with that finding. Accordingly, the McAdams may not commence an action under the IDEA to enforce this decision.

### b. The IEP for the 2000–2001 School Year

The McAdams requested a hearing to review Arley's IEP for the 1999–2000 school year. As such, the IHO was to decide whether the IEP for the 1999–2000 school year was appropriate, not the IEP for the 2000–2001 school year. *See In the Matter of the Application of the Bd. of Ed. of the Wappingers Central School Dist.,* 18 Educ. Dep't Rep. 558, 560 (May 4, 1979) ("The hearing officer was appointed to review the appropriateness of the educational placement proposed for the 1978–79 school year and lacked authority to expand his review to include prior school years."); *Application of a Child with a Disability,* Appeal No. 94–13, at 4, *available at http:// seddmznt.nysed.gov/sro/94"13.htm* (stating that the IHO lacked jurisdiction "to change the child's placement upon the basis of an IEP to be prepared after the hearing.").

Because the IHO decided an issue that he was not appointed to decide, the SRO properly annulled his decision and directed that the CSE recommend an IEP for the 2000–2001 school year within 20 days of his decision. Since that date, the McAdams have not gone through the administrative proceedings for Arley's IEP for the 2000–2001 school year. As such, the administrative remedies for that school year remain unexhausted. The Court now turns to whether an exception to the exhaustion requirement applies.

### 3. Exceptions to the Exhaustion Requirement under the IDEA

Congress provides three general situations where the exhaustion of the administrative remedies under the IDEA are not required: (1) where it would be futile to use the due process procedures; (2) where an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) where it is improbable that adequate relief can be obtained by pursuing administrative remedies. *Mrs. W. v. Tirozzi,* 832 F.2d 748, 756 (2d Cir.1987) (citations omitted). The Second Circuit has collapsed exceptions two and three into exception one, namely the futility exception. *Hope,* 872 F.Supp. at 22 ("The Second Circuit in *Heldman* effectively collapsed (2) and (3) above into the futility exception...."). *See also Polera,* 288 F.3d at 488 (stating that exhaustion is futile if the "administrative procedures do not provide adequate remedies.") (internal quotation marks and citations omitted).

### a. The Futility Exception

■ The plaintiffs bear the burden of showing that the futility exception applies. *Polera,* 288 F.3d at 489 n. 8. The futility exception applies when an administrative body persistently fails to render an expeditious decision with respect to a child's educational placement. *See Frutiger v. Hamilton Central School Dist.,* 928 F.2d 68, 74 (2d Cir.1991). As noted below, the administrative proceedings in this case were not conducted in a timely fashion.

■ On May 18, 1999, the McAdams requested an impartial hearing to review the IEP for the 1999–2000 school year. Although the McAdams were entitled to a determination within 45 days of the Rocky Point BOE's receipt of the request, a decision was not rendered until October 16, 2000. Thereafter, on an undisclosed date, the Rocky Point BOE appealed the IHO's decision to the New York State Education Department. Although the regulations require that the SRO issue a written decision within 30 days after the receipt of the request for a review or note for the record the reasons for the extension of time, the SRO did not issue his decision until April 12, 2001. The record reveals no reason for the SRO's delay in making his determination. In short, there was a delay of almost two years before a final decision by the SRO was made on the McAdams' complaint. The Court finds that this delay is unacceptable.

Also, the SRO noted that all evaluations ordered by the IHO had been completed and that the CSE must recommend an educational program for Arley for the remainder of the 2000–2001 school year within 20 days of his decision. As of July 22, 2002, the CSE has still not produced Arley's IEP for the 2000–2001 school year. Although the Rocky Point BOE contends that the McAdams have refused to cooperate with the CSE in preparing the IEP for the 2000–2001 school year, there is no reason why the Rocky Point BOE could not comply with the SRO's decision and issue an IEP without the cooperation of the parents. Regardless of the McAdams alleged lack of cooperation, the Rocky Point BOE had a duty to abide by the SRO's mandate to issue an IEP for the 2000–2001 school year within 20 days. This it did not do.

Because the Rocky Point BOE, the CSE, the IHO and the SRO failed to render decisions expeditiously with respect to Arley's educational placement, application of the futility exception is warranted and the exhaustion requirement is excused. Accordingly, the motion to dismiss for lack of subject matter jurisdiction is denied.

### III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED,** that the motion to dismiss the complaint for lack of subject matter jurisdiction on the ground that the plaintiffs failed to exhaust their administrative remedies is **DENIED;** and it is further

**ORDERED,** that the parties are directed to appear forthwith before United States Magistrate Judge E. Thomas Boyle to complete discovery.

**SO ORDERED.**