**Nancy STARKEY, as natural parent and and guardian of her daughter Samantha STARKEY, an infant, the Plaintiff**

**v.**

**SOMERS CENTRAL SCHOOL DISTRICT and Dr. Richard Brodow, the Defendants**

**No. 02 CIV.2455(SCR).**

United States District Court, S.D. New York.

March 18, 2004.

Raymond G. Kruse, Raymond G. Kruse, P.C., Spring Valley, NY, for Plaintiff.

Jennifer H. Pymm, Lewis R. Silverman, Rutherford & Christiee, LLP, New York City, for Defendants.

### MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

### I. BACKGROUND:

#### A. PROCEDURAL HISTORY:

Nancy Starkey (the "Plaintiff"), as natural parent and guardian of her daughter Samantha Starkey ("Samantha"), a minor child, has alleged eight causes of action against Somers Central School District ("Somers") and Dr. Richard Brodow ("Dr.Brodow") (Dr. Brodow and Somers, collectively, are referred to herein as the "Defendants"). The first seven causes of action concern allegations by the Plaintiff,

pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400–1490 ("IDEA"), that the Defendants failed to provide necessary educational accommodations to the Plaintiff. The Plaintiff contends that she has a severe handwriting disability that emotionally debilitated her to the extent that she was unable to return to Somers High School and had to enroll with the Katonah–Lewisboro School District as a tuition student.

The eighth cause of action arises out of a different set of facts. It does not involve a claim under the IDEA, but instead is based under the 14th Amendment to the United States Constitution, the New York State Constitution, Article Eleven § 1 and under New York Education Law § 3214(3), all in violation of 42 U.S.C. § 1983. The eighth cause of action stems from an incident when the Plaintiff was suspended from school in excess of five days without a hearing.

The Defendants have made a motion to dismiss the Plaintiff's amended complaint (the "Complaint") on three grounds: (1) the Plaintiff failed to exhaust her administrative remedies under the IDEA; therefore, the first seven causes of action in the Complaint must be dismissed in their entirety; (2) the Plaintiff's Complaint should be dismissed as it relates to Samantha's suspension based on a pending commissioner's decision; and (3) Dr. Brodow is entitled to qualified immunity. The Plaintiff argues that dismissal is inappropriate because (A) it was unnecessary to exhaust administrative remedies under the IDEA because exhaustion would have been futile and/or inadequate as both a legal and practical matter, (B) it was unnecessary to exhaust administrative remedies in connection with the commissioner's decision and (C) Dr. Brodow is not entitled to qualified immunity because he violated the Plain-

tiff's constitutional rights, of which a reasonable person would have known and that his actions were objectively unreasonable. For the reasons set forth in greater detail below, the Defendants' motion to dismiss is granted as to the first argument and denied as to the second and third arguments.

### B.  IDEA BACKGROUND:

For the purposes of this analysis, it is essential to review the purpose and requirements of the IDEA. The Second Circuit performed the same analysis in *Polera*[1] and this Court relies heavily upon that analysis.

The IDEA provides that potential plaintiffs with grievances related to the education of disabled children generally must exhaust their administrative remedies before filing suit in federal court, even if their claims are formulated under a statute other than the IDEA (such as the ADA or Rehabilitation Act, as is the case here). Therefore, this Court must ascertain whether the IDEA exhaustion requirement applies and, if so, whether the Plaintiff's failure to exhaust administrative remedies deprives this Court of subject matter jurisdiction.

The educators and parents of a child covered by the IDEA must jointly develop an "individualized education program" ("IEP") for each year of the child's education. See 20 U.S.C. § § 1401(11), 1414(d). According to the statute, an IEP must include: (a) a statement of the child's present levels of educational performance, (b) a statement of measurable annual goals, including benchmarks or short-term objectives, (c) a statement of the special education and related services and supplementary aids and services to be provided to the child, or on behalf of the child, and (d) a statement of the program modifica-

---

**1.** *Polera v. Bd. of Educ.*, 288 F.3d 478, 487 (2d   Cir.2002).

tions or supports for school personnel that will be provided for the child, which modification should work toward the annual goals. *Id.* § 1414(d)(1)(A). The IEP is the central mechanism by which public schools ensure that their disabled students receive a free appropriate public education.

The IDEA requires that states offer parents of a disabled student extensive procedural safeguards to ensure that the education of their child. *See id.* § 1415(a). Such procedural safeguard include: (a) the right to examine records relating to the child, (b) to participate in meetings with respect to the identification, evaluation, and educational placement of the child, (c) the provision of a free appropriate public education to such child, (d) to obtain an independent educational evaluation of the child, *id.* § 1415(b)(1), (e) written notice prior to any changes in the child's identification, evaluation or educational placement, *id.* § 1415(b)(3), (f) an opportunity to present complaints with respect to such matters, *id.* § 1415(b)(6), and, whenever any such complaint is made, the right to "an impartial due process hearing ... by the State educational agency or by the local educational agency," with corresponding rights to be accompanied and advised by counsel, to present evidence and cross-examine witnesses, to receive a written record of proceedings, and to receive written findings of fact and decisions. *Id.* § 1415(f)(1) & (h).

Under New York State's regulations, either a "parent or a school district may initiate a hearing on matters relating to the identification, evaluation or educational placement of a student with a disability, or the provision of a free appropriate public education to the child." 8 N.Y.C.R.R. § 200.5(i)(1). The parent or attorney representing the student must provide detailed written notice of their complaint to the school district, *id.* § 200.5(i)(1)(i), whereupon "the board of education shall arrange for such a hearing to be conducted" and shall "immediately appoint an impartial hearing officer" from a rotating list of officers, *id.* § 200.5(i)(3). Several rules apply to the conduct of the hearing: for example, the parties "may be accompanied and advised by legal counsel," the parties "shall have an opportunity to present evidence, compel the attendance of witnesses and to confront and question all witnesses at the hearing," a written record of proceedings shall be maintained and made available to the parties, interpreters shall be provided at district expense, the hearing shall be closed to the public unless the parent requests otherwise, and the hearing officer shall render a written decision "not later than 45 days after the receipt by the board of education of a request for a hearing or after the initiation of such a hearing by the board." *Id.* § § 200.5(i)(3)(iii)—(xiv); 200.5(i)(4).

The New York State Regulations also provide for an appeals process, which includes a provision whereby the decision of the impartial hearing officer may be reviewed upon the request of either the board of education or the parents by an appeal to a State Review Officer of the State Education Department." *Id.* § 200.5(j)(1). Generally, a final written decision by the State Review Officer must be rendered within thirty days of the receipt of a request for a review. *Id.* § 200.5(j)(2).

Although the IDEA provides for a federal cause of action to enforce the rights thereunder, it imposes a requirement that plaintiffs first exhaust administrative remedies. Specifically, the IDEA provides that:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available un-

der the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*

*Id.* § 1415(1) (emphasis added).

C. STATEMENT OF FACTS:

There are two operative sets of facts, one set in relation to the first seven causes of action, and a second set in relation to the eighth cause of action, each of which is set forth below.

*Causes of Action 1–7*

Samantha Starkey attended elementary school in the Somers Central School District during the 1994/1995 school year. She was referred to the school district's Committee on Special Education ("CSE") and an Individualized Education Program ("IEP") was designed for her. She was classified as "other health impaired" in the IEP that was prepared for the 1995/1996 school year. Samantha's parents enrolled her in private school and she did not attend Somers for the school years 1996/1997–1998/1999. She re-entered Somers in 1999/2000 and the CSE was not made aware of her re-entry. The Plaintiff contacted Somers after Samantha was having difficulty in several of her classes due to her handwriting and a CSE meeting was convened on either February 3, 2000 or April 3, 2000 (there is a discrepancy as to this date between the parties' papers), which the Plaintiff attended. Following the meeting, testing was performed on Samantha and reports and comments were solicited from her teachers. A subsequent meeting was held and it was decided that Samantha should be declassified. Several attempts were made to schedule a '504 Meeting' with Somers and the Plaintiff, however, such attempts were unsuccessful and no 504 Meeting was held. Even though the meeting was never held, Somers directed Samantha's teachers to permit her certain educational accommodations, including the use of computers and calculators. Additionally, spelling errors on tests and assignments were waived. On March 1, 2001, the CSE again recommended declassification for Samantha.

The Plaintiff's attorney forwarded Somers a letter from the Plaintiff dated April 30, 2001 requesting an impartial hearing pursuant to 20 U.S.C. § 1415(f) of the IDEA. Somer's attorney forwarded the Plaintiff a form entitled "Request for Due Process Proceedings." The Plaintiff completed said form and returned it to Somers on June 10, 2001. Somers began contacting hearing officers from a list provided by the State Education Department on July 31, 2001 and the Board adopted a resolution appointing Dr. David L. Marasciullo ("Dr.Marasciullo") as the hearing officer on August 6, 2001. The first session of the impartial hearing was held on September 12, 2001. Barry Whalen, the Director of Special Services testified at that hearing and his testimony continued at the second hearing, which was held on October 2, 2001. The Plaintiff expressed concerns about the impartial hearing and the hearing officer in an October 11, 2001 letter to the New York Education Department. After the October 2 hearing, but before October 11, 2001, the Plaintiff withdrew Samantha from Somers. The Plaintiff wrote a letter dated October 23, 2001 withdrawing from the impartial hearing. On November 20, 2001, the Plaintiff wrote a letter requesting an immediate/new impartial hearing. The Plaintiff and her attor-

ney refused to allow Dr. Marasciullo to preside over the requested hearing and refused to schedule any further date(s) to complete said hearing. In January 2002, the Plaintiff enrolled Samantha as a tuition high school student in the Katonah–Lewisburg School District.[2] Later in 2002, the Plaintiff commenced this lawsuit in federal district court.

*Cause of Action 8*

In April 2001, Samantha was suspended from school for writing a poem entitled "Killing Clocks." The name of one of Samantha's teachers at the time was Mary Ellen Klock and the Somers administrators believed the poem was threatening toward Ms. Klock. Somers brought disciplinary charges against Samantha and a disciplinary hearing was scheduled for April 20, 2001, which was rescheduled for April 23, 2001 by Dr. Brodow.[3] By a decision on May 1, 2001, the Assistant Superintendent Crowley found Samantha guilty of the charges and on May 2, 2001, Superintendent Brodow adopted those findings. The Plaintiff filed an appeal to the Commissioner of Education, which had not been decided at the time the Defendants' Motion was filed. Subsequently, the Commissioner affirmed the decision, finding that the issue was moot because Samantha had already served her suspension.

## II. *STANDARD OF REVIEW:*

### A. 12(b)(1):

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996). When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff. *See Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir. 1997). Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief. *See Securities Investor Protection Corp. v. BDO Seidman, LLP,* 222 F.3d 63, 68 (2d Cir.2000), certified question accepted by 95 N.Y.2d 831, 712 N.Y.S.2d 910, 734 N.E.2d 1211 (2000).

### B. 12(b)(6):

"Given the Federal Rules' simplified standard for pleading, 'a court may dismiss a complaint *only* if it is clear that no relief could be granted under *any* set of facts that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (emphasis added) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *see also Bernheim v. Litt,* 79 F.3d

---

**2.** It should be noted that the Plaintiff and her family live in Katonah and Samantha's brother, the Plaintiff's son, attends (and did so prior to the events in question) high school in the Katonah–Lewisburg School District.

**3.** The Plaintiff discussed this change in date at great length in both its opposition and at oral argument. According to the Plaintiff, Dr. Brodow initially said he rescheduled pursuant to an agreement with the Plaintiff's attorney. Dr. Brodow later admitted that this was not the case and that he had unilaterally rescheduled the disciplinary hearing. A determination regarding this issue is not relevant to this Court's inquiry on the Defendants' motion to dismiss.

318, 321 (2d Cir.1996) (the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"). When reviewing a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept "as true the facts alleged in the Complaint." *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 699–700 (2d Cir.1994). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the task of the court addressing the 12(b)(6) motion is not to determine the weight of the evidence, but only to assess the legal feasibility of the complaint. *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir.2000). In connection with such inquiry, all reasonable inferences are to be drawn in the plaintiff's favor, which often makes it "difficult to resolve [certain questions] as a matter of law." *In re Independent Energy Holdings PLC*, 154 F.Supp.2d 741, 747 (S.D.N.Y.2001).

### III. *ANALYSIS:*

As set forth above, the defendant has moved to dismiss on three separate grounds, this Court addresses each of those grounds individually.

A. WHETHER THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY FOR LACK OF SUBJECT MATTER JURISDICTION, PURSUANT TO FED.R.CIV.P. 12(B)(1), BECAUSE THE PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES UNDER THE IDEA.

**(1) Exhaustion of Administrative Remedies.**

The IDEA's exhaustion requirement was intended to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances. *Polera v. Bd. of Educ.*, 288 F.3d 478, 487 (2d Cir.2002). The exhaustion require-

ment "prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes." *Heldman v. Sobol*, 962 F.2d 148, 159 (2d Cir.1992). "Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir.1992). The Second Circuit has made it clear that a plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction. *Hope v. Cortines*, 69 F.3d 687, 688 (2d Cir.1995).

The Second Circuit has required that a plaintiff must exhaust all administrative remedies even when damages are being sought that are not available under the IDEA. *See Polera* at 488. Furthermore, a plaintiff may not evade the IDEA's exhaustion requirement merely by tacking on a request for money damages. *Id.* In *Buffolino v. Board of Educ.*, 729 F.Supp. 240 (E.D.N.Y.1990), the court rejected just such an argument by the plaintiffs, stating, "if the Court were to hold that plaintiffs in this case are excused from exhausting their remedies because adequate relief could not be obtained, plaintiffs could avoid administrative procedures merely by asking for relief that administrative authorities could not grant." *Buffolino* at 247.

In the instant matter, the court need not address the question of whether or not the administrative remedies have been exhausted because the Plaintiff does not contend that she exhausted such administra-

tive remedies. The Plaintiff unilaterally withdrew from the impartial hearing process before a decision was reached and did not avail herself to the appeals process available under New York's regulatory system. Instead, the Plaintiff claims she should be able to sidestep the administrative process because the "exhaustion would have been futile and inadequate." (Plaintiff's Opposition, Page 6). This Court must address whether the Plaintiff has made sufficient allegations of futility and inadequacy to maintain her causes of action.

### (2) Futility and/or Inadequacy.

The Second Circuit has recognized that the IDEA's exhaustion requirement does not apply "in situations in which exhaustion would be futile because administrative procedures do not provide adequate remedies." *Heldman v. Sobol,* 962 F.2d 148, 158 (2d Cir.1992); *see also* H.R.Rep. No. 99–296, at 7 (1985); *Mrs. W. v. Tirozzi,* 832 F.2d 748, 756 (2d Cir.1987). In *Honig v. Doe,* 484 U.S. 305, 327, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), which was decided under the EHA (the precursor to the IDEA), the Supreme Court found that the burden of demonstrating futility rests with the party seeking to avoid the exhaustion requirement. In *Polera,* the Second Circuit adopted the *Honig* rule and applied such rule to the IDEA. *Polera* at 489, n. 8. Accordingly, in the case at bar, the Plaintiff bears the burden of proving that it would have been futile for her to seek relief through the administrative process or that the remedies offered by that process would have been inadequate. Both the Plaintiff's Opposition and statements made by the Plaintiff's counsel during oral argument advance two principal argu-

ments with respect to the futility/inadequacy standard outlined in *Heldman.* First, the Plaintiff argues that the administrative process was futile because the New York state law, established pursuant to the IDEA, sets forth a 45–day period for the impartial hearing process and that time was exceeded by the Defendants. Second, the Plaintiff argues that the administrative process would have been inadequate because she was seeking damages not available under the IDEA.

### 1. Futility of the Administrative Process:

██ The Plaintiff's claim with regard to 'futility' is that the process exceeded the 45–day period. As set forth above, the IDEA requires that states establish procedural safeguards to ensure that an effective administrative process is available to parents of disabled children. *See* § 1415(a). Under the applicable New York State regulation, 8 N.Y.C.R.R. § 200.5(i)(4)[4], the impartial hearing officer is required to render a written decision "not later than 45 days after the receipt by the board of education of a request for a hearing *or after the initiation of such a hearing by the board.*" 8 N.Y.C.R.R. § 200.5(i)(4) (emphasis added).

The Plaintiff relies on the first clause of the statutory language quoted above, but ignores the second clause. There is no dispute that the Plaintiff submitted a 'Request for Due Process Proceedings' form on June 10, 2001 and that the first day of the impartial hearing was not until September 12, 2001, well over the 45–day period. However, the New York State Regulation also provides a 45–day period from the commencement of hearing, which would extend the impartial hearing offi-

---

4. The Plaintiff claims that the 45–day requirement of 34 CFR § 300.511 should apply in this case. However, the proper '45–day' pro- vision is from 8 N.Y.C.R.R. 200.5(i)(4). *See Polera.*

cer's time to issue a decision until October 27, 2001. By that date the Plaintiff had withdrawn from the process. The Plaintiff cannot claim futility regarding the 45–day period following the submission of the "Request for Due Process Proceedings" form, when after such time she voluntarily engaged in the administrative process. It is clear that under 8 N.Y.C.R.R. § 200.5(i)(4), by commencing the impartial hearing on September 12, 2001, the Plaintiff commenced the running of a 45–day time period, which period had not expired when the Plaintiff voluntarily withdrew from the impartial hearing. It is clear that the process was not futile because the requisite period of time under New York State law had yet to expire. Having determined that the Plaintiff has failed to meet its burden of showing that it did not have to exhaust its administrative remedies because doing so would have been futile; this Court must address the Plaintiff's contention that such remedies would have been inadequate.

### 2. Inadequacy of the Administrative Remedies:

■ With respect to the adequacy of the available administrative remedies, the *Polera* case is the central case on point wherein the Second Circuit addressed a factual scenario similar to the current case. In *Polera*, the court held "that disabled-student plaintiffs, like Ms. Polera, should not be permitted to 'sit on' live claims and spurn the administrative process that could provide the educational services they seek, then later sue for damages." *Polera* at 490. If plaintiffs were allowed to engage in such conduct, it would frustrate the IDEA's central objective of promptly resolving grievances through interaction between parents of disabled children and the educators, without the involvement of the courts. *Polera* at 490. The *Polera* court further held that "[t]he fact that the

administrative process could not provide damages does not render Polera's claim futile; she could have obtained complete relief at the time, through changes to her IEPs, additional educational services, and, if necessary, remedial education." *Polera* at 490

The logic employed by the Second Circuit in *Polera* is directly applicable to the case at bar. As made absolutely clear in *Polera*, the IDEA is intended to remedy precisely the sort of claim that forms the basis of the Plaintiff's complaint in this case: that a school district failed to provide appropriate educational services and accommodations to a disabled child. The fact that the Plaintiff seeks damages, in addition to the relief that is available under the IDEA, should not enable her to sidestep the exhaustion requirements of the IDEA. The Plaintiff spurned the administrative process that could have provided the educational services that were being sought for Samantha. Now the Plaintiff is suing for damages, alleging that the IDEA did not provide an adequate means of redress.

The Plaintiff, in accordance with the Second Circuit's holding in *Polera*, should have pursued the administrative process to its conclusion, completing the impartial hearing and, if necessary, taking advantage of the appellate option available under the New York regulatory system. If, after a complete impartial hearing and appeal, the Plaintiff was still not satisfied with the result, a complete record would have been created and she then could have filed this lawsuit. Instead, the Plaintiff unilaterally withdrew from the impartial hearing before a ruling had been reached and now seeks to fashion a complaint and arguments supporting the theory that the administrative process never would have provided the desired remedies. The case at issue began with the Plaintiff engaging in

the administrative process to address Samantha's situation. Only now, for the purposes of this lawsuit, has the Plaintiff changed her theory to assert that her grievances were never about Samantha's education situation and that redress would not have been available through the administrative process. If the case was never about Samantha's educational requirements, why did the Plaintiff begin and participate in the administrative process? In that case, the lawsuit would have more merit had it been commenced right away, not after the Plaintiff became dissatisfied with the impartial hearing and the impartial hearing officer. The Plaintiff attempts to get around this issue by alleging, both in the Plaintiff's Opposition and at oral argument, that Samantha's situation deteriorated while the hearing process was going on and that she had to be pulled out of school, at which point the remedies under the IDEA became inadequate.

It is noteworthy that the Plaintiff was represented by her current attorney in this matter at least as early as April 30, 2001, and possibly earlier. It is clear from the record that her current attorney was actively involved throughout the hearing process, prior to the Plaintiff's withdrawal from such process, on the Plaintiff's behalf. The involvement of counsel creates the inference that the Plaintiff's decision not to continue with the administrative process was a tactical decision; not a mistake made by a Plaintiff unaware of the requirements of the law under the IDEA.

In the Plaintiff's Opposition, the Plaintiff it is asserted that: "[a]ll of the injury to Samantha that is the subject of the instant matter occurred prior to the withdrawal, and could not be effectively remedied through administrative proceedings."

(Plaintiff's Opposition, Page 7). Her attorney reiterated this allegation at length during the November 18, 2003 oral argument on the motion to dismiss. However, the Plaintiff's argument that such allegation proves inadequacy fails. The evidence that has been presented to the Court makes it very clear that the Plaintiff continued to seek administrative remedies after withdrawing Samantha from school.

On October 23, 2001, the Plaintiff wrote the Defendants a letter whereby she withdrew from the impartial hearing. Such letter states that the Plaintiff will continue to pursue having Samantha "properly classified" and to have her receive the "necessary accommodations and services to which she is entitled." Accordingly, and contrary to her attorney's assertions at oral argument[5], as of the date of the withdrawal the Plaintiff was not claiming that continuing with the administrative process would be futile or inadequate. The desired objectives, an amended classification and associated accommodations, were clearly remedies that the administrative process, and Somers, could have provided if it was determined by either Dr. Marasciullo or the State Review Officer that such classification and/or accommodations were appropriate.

The Plaintiff's claims of futility and/or inadequacy are further undermined by the fact that on November 11, 2001, the Plaintiff wrote another letter to the Defendants requesting an immediate impartial hearing. In such letter, the Plaintiff alleged that Samantha had been "wrongly and confusingly declassified, procedurally as well as substantively." The Plaintiff also alleged that the Defendants "failed to provide [Samantha] with the necessary services and accommodations which she

---

5. While this Court appreciates zealous advocacy and recognizes that it is the job of counsel to assert the facts in a manner most favorable to their client, counsel may not misrepresent the facts to further their client's position.

requires and to which she is entitled." Finally, and most damaging with respect to the Plaintiff's claims of inadequacy, in the Plaintiff's November 11, 2001 letter, the Plaintiff asked for the following remedies: "(1) proper classification as a student with a disability; (2) proper placement; and (3) appropriate psychological and counseling services, physical therapy, occupational therapy, school social work; assistive technology services and other appropriate services." Although the Plaintiff's litany of demands in the November 11, 2001 letter were extensive, all such demands were for remedies available through the administrative process without resort to the federal or state courts. Her attorney's disingenuous representations to this Court that at the time the Plaintiff withdrew from the impartial hearing, Samantha was too upset to continue attending school and that any remedies available under the IDEA would have been inadequate are in direct contradiction to the letters of October 23, 2001 and November 11, 2001, both of which were written by the Plaintiff while represented by her current attorney.

Although the Plaintiff's Opposition attempts to confuse the nature of this action, the core of the Plaintiff's complaint is about (1) a lack of action by the Defendants with respect to Samantha's disability and (2) certain complaints with regard to the impartial hearing and impartial hearing officer. These are both issues that should have been handled through the administrative process, which has been mandated by Congress pursuant to the IDEA. The process, if followed to its conclusion, could have yielded adequate redress; the requested educational accommodations for Samantha. If the process did not provide for the Plaintiff's desired results, or if there were other issues with the process that the Plaintiff found unfair (i.e. a failure of the hearing officer to remain impartial

or awake, as the Plaintiff has alleged), she could have appealed his decision to the State Review Officer of the State Education Department. Instead, the Plaintiff unilaterally withdrew from the administrative process in direct contravention to the IDEA and the Second Circuit's interpretation of the IDEA in *Polera*.

The Plaintiff was required to exhaust the administrative remedies pursuant to the IDEA and did not. Alternatively, the Plaintiff had the burden of showing that the administrative process would have been futile and/or inadequate, but the Plaintiff has not satisfied this burden. Accordingly, the Defendants' motion to dismiss the first seven causes of action pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction is granted.

**B.** WHETHER THE PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED AS IT RELATES TO SAMANTHA'S SUSPENSION BASED ON THE PENDING COMMISSIONER'S DECISION.

At the time the Defendants submitted this motion to dismiss, the Commissioner of Education had not issued a decision in connection with the Plaintiff's appeal of Samantha's suspension for her threatening poem, "Killing Clocks". Therefore, the Defendants moved to dismiss the Plaintiff's eighth cause of action on the ground that such claim was not ripe because no final decision had been made. Since that time the Commissioner issued a ruling, dismissing the Plaintiff's appeal on grounds of mootness since the Plaintiff had already served her suspension. The Plaintiff's cause of action is now ripe because the Commissioner issued a final decision. The Defendants' motion to dismiss on ripeness grounds is denied.

**C.** WHETHER DR. RICHARD BRODOW IS ENTITLED TO QUALIFIED IMMUNITY.

The Defendants argue that Dr. Richard Brodow, the Superintendent of

the Somers Central School District, who is an individual defendant in this matter, was an employee of the defendant school district and was acting in his official capacity, and therefore is entitled to qualified immunity. (Defendants' Motion, Page 14). The Defendants cite to *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) for the proposition that government officials, including teachers and school administrators are entitled to qualified immunity if their conduct (1) does not violate clearly established rights of which a reasonable person would have known, or (2) it was "objectively reasonable" for the defendant to believe that the conduct did not violate plaintiff's clearly established constitutional rights. (Defendants' Motion, Page 14). Based on *Harlow,* the Defendants submit that Dr. Brodow should be granted qualified immunity and the allegations of the Complaint with regard to him should be dismissed.

■ Any ruling regarding the availability of a qualified immunity defense would be premature at this time. "Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stephenson v. Doe,* 332 F.3d 68,76 (2d Cir. 2003) (quoting *McCardle v. Haddad,* 131 F.3d 43, 50 (2d Cir.1997)). The Second Circuit gives deference to the "qualified immunity" defense stating that it is "more than a simple defense—it is an entitlement not to stand trial or face the burdens of litigation." *Loria v. Gorman,* 306 F.3d 1271, 1281 (2d Cir.2002). Notwithstanding such deference, this Circuit has held that the qualified immunity issue "turns on factual questions that cannot be resolved at [the motion to dismiss] stage of proceedings." *Taylor v. Vermont Dept. of Educ.,* 313 F.3d 768, 793 (2d Cir.2002) (denying the defendant's motion to dismiss on qualified immunity grounds). In *Stephenson* the court advised that a "defendant should press a qualified immunity defense during pretrial proceedings so that such a claim *can be disposed of by summary judgment* where possible, or factual disputes material to the defense can be identified and presented to the jury." *Stephenson* at 76 (emphasis added).

In the case at bar, the qualified immunity issue depends on the determination of certain factual questions that cannot be answered at this stage of the litigation. Specifically, it is unclear what information Dr. Brodow possessed when he allegedly deprived the Plaintiff of her rights, or whether there are other facts that may come to light that would render his actions "objectively reasonable." As set forth in Section II above, on a motion to dismiss the court must accept the plaintiff's allegations as true. Whether or not such allegations are in fact true shall be determined at the summary judgment and/or trial phase of this matter. Accordingly, dismissal for qualified immunity is not proper at this time and the Defendants' motion to dismiss claims against Dr. Brodow is denied.

## IV.  CONCLUSION:

The Plaintiff admittedly failed to exhaust her administrative remedies before bringing this lawsuit in federal court. As set forth more fully above, this Court finds that the Plaintiff has failed to show that she was excused from exhausting such remedies because such exhaustion would have been futile and/or inadequate. Accordingly, pursuant to Fed.R.Civ.P. 12(b)(1), this Court lacks subject matter jurisdiction over the claims contained in the Plaintiff's first seven causes of action.

The Defendants' motion to dismiss such causes of action is granted.

The Defendants' motion to dismiss the Plaintiff's eighth cause of action is denied with respect to both the ripeness and qualified immunity arguments.

It is so ordered.